**Gary D. GILLIHAN,**
**Plaintiff–Appellant,**

v.

**Duane SHILLINGER; Tom Shanyfelt;**
**and John Bunch,**
**Defendants–Appellees.**

**No. 87–2404.**

United States Court of Appeals,
Tenth Circuit.

April 12, 1989.

Gary D. Gillihan, pro se.

Terry L. Armitage, Asst. Atty. Gen., State of Wyo., Cheyenne, Wyo., for defendants-appellees.

Before ANDERSON and TACHA, Circuit Judges, and ROGERS, District Judge.*

PER CURIAM.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Plaintiff-appellant appeals the district court's order of September 10, 1987, dismissing his complaint for failure to state a claim, denying his motion to supplement his complaint, denying his motion for summary judgment, and denying his motion for a

* The Honorable Richard D. Rogers, United States District Judge for the District of Kansas, sitting by designation.

temporary restraining order, a preliminary injunction, and an order to show cause. Plaintiff commenced the underlying civil rights action pursuant to 42 U.S.C. § 1983 against defendants, who are the warden, the office manager, and the central services unit manager at the Wyoming State Penitentiary in Rawlins, Wyoming.

Plaintiff alleged in his complaint that defendants violated his right to due process and subjected him to cruel and unusual punishment. Specifically, plaintiff stated that in 1985, he was transferred to Arizona from Wyoming at the request of Wyoming prison officials. In April of 1987, at the request of Arizona prison officials, he was returned to Wyoming. Upon his return, defendant Shanyfelt informed plaintiff that he was going to be charged for transportation expenses relating to his return to Wyoming, in the amount of $174.53. Shanyfelt also informed plaintiff that his prison account was going to be frozen until the bill was paid in full.

Plaintiff asserted that by failing to give him notice of the charge until after it was levied and depriving him of an opportunity to refuse the transportation based on his inability to pay for it, defendants deprived him of his right to due process. He stated that he filed an administrative grievance, but defendants Bunch and Shillinger responded by approving the assessment of the charge and the freezing of his account.

Plaintiff also alleged that he was subjected to cruel and unusual punishment. He said that since he was in protective custody and unable to get a job, the bill would remain outstanding against his prison account indefinitely and would render nugatory all support from outside the prison. Furthermore, the prison only provided "bare necessities to maintain human health standards," and due to his lack of funds, he was unable to purchase cigarettes, coffee, and personal hygiene items, thereby being "stripped [of] what little luxury [he] had."

Plaintiff requested declaratory relief, as well as punitive and compensatory damages against each defendant. At the time he filed his complaint, plaintiff also filed a motion to proceed in forma pauperis and a motion for temporary restraining order, preliminary injunction, and order to show cause. He sought to be protected from any retaliation by defendants and to have his prison account unfrozen. The court entered orders on May 11, 1987, granting plaintiff leave to proceed in forma pauperis and denying his other motion.

Thereafter, plaintiff filed a motion to supplement his complaint. He alleged that after he filed his complaint, defendants removed $2.28 from his account, without prior notice or a hearing, in partial payment of the transportation bill. Plaintiff's allegations suggested that the account only contained the $2.28 removed by defendants.

Defendants responded to plaintiff's complaint by filing a motion to dismiss for failure to state a claim pursuant to Fed.R. Civ.P. 12(b)(6). Defendants asserted that the court should defer to the prison officials' "broad administrative and discretionary authority" in the management of the prison. They also argued that plaintiff had "nothing more than a property right claim," which was not protected by § 1983, and that he had adequate state and administrative remedies for his alleged deprivation of property.

Plaintiff filed both a traverse to the return and a motion for summary judgment. In the former, he asserted that although he was incarcerated, he was not stripped of all constitutional protections, and that his right to own and enjoy property was protected by the fifth and fourteenth amendments. He further asserted that defendants' actions were punitive in nature, and that he was entitled to due process before being subject to such punishment. Furthermore, he argued, he had a liberty interest in being able to purchase items from the commissary and elsewhere as permitted by prison regulation, which defendants violated.

In his motion for summary judgment, plaintiff asserted that defendants, by filing a motion to dismiss, admitted all the facts alleged by plaintiff, and that based upon the traverse to the motion and the exhibits attached to the motion for summary judgment, he was entitled to judgment. The

exhibits attached consisted of plaintiff's grievance, as well as correspondence from Shanyfelt and Shillinger concerning the transportation bill. Also attached were notes from an institution classification committee hearing in Arizona finding plaintiff guilty of attempting to escape and threatening the staff through letters, and recommending that he be placed in administrative segregation pending his transfer back to Wyoming.

A few weeks later, plaintiff filed another motion for temporary restraining order, preliminary injunction, and order to show cause, in which he sought an order directing defendants to reopen his account and to refrain from "confiscating" any funds in the account, including those received from persons outside the prison, pending the court's final ruling in the action.

On September 10, 1987, the court entered the order at issue on appeal. The court apparently rejected the arguments of defendants for dismissal, since it denied defendants' motion to dismiss. The court determined, nonetheless, that plaintiff's complaint did not state a claim upon which relief could be granted. The court found that plaintiff had requested the transfer and his own actions were responsible for his being returned to Wyoming, and concluded that it was not unreasonable to require plaintiff to pay some of the costs of the transportation.

On appeal, plaintiff argues that the district court erred in dismissing his complaint because he was entitled to due process before being charged for the transportation costs and having his account frozen, there was no statutory authority for the charge, and the prison manual does not state that an inmate will be charged for the costs of transportation or that his account will be frozen as a result thereof. Plaintiff also asserts that he was denied equal protection under the fourteenth amendment because his account was frozen and those of other prisoners were not. We will not consider on appeal those issues that were not raised in the district court. *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826, 837 (1976); *United*

*States v. Beery,* 678 F.2d 856, 861 (10th Cir.1982).

Plaintiff also asserts that the district court abused its discretion in denying his motion to supplement the complaint, and that it erred in denying his motion for summary judgment. Plaintiff does not mention the district court's dismissal of either of his motions for temporary restraining orders, preliminary injunctions, and orders to show cause. We, therefore, must deem the latter abandoned on appeal. *See United Transp. Union v. Dole,* 797 F.2d 823, 827 (10th Cir.1986). Defendants' arguments on appeal are the same as those asserted below in their motion to dismiss.

We review the district court's dismissal of plaintiff's complaint *de novo,* since the sufficiency of a complaint is a question of law. *See Morgan v. City of Rawlins,* 792 F.2d 975, 978 (10th Cir.1986). A complaint should not be dismissed under Fed.R.Civ.P. 12(b)(6) unless the court concludes, as a matter of law, that the plaintiff can prove no facts that would entitle him to relief. *Id.*

In reviewing a dismissal for failure to state a claim, we presume that all of plaintiff's allegations are true and construe them in the light most favorable to him. *Id. See also Meade v. Grubbs,* 841 F.2d 1512, 1526 (10th Cir.1988). Furthermore, we construe pro se pleadings liberally and hold them to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652, 654 (1972).

■ The gravamen of plaintiff's complaint was that he was deprived of his property without due process. To determine whether plaintiff's allegations stated a claim, we must first determine whether plaintiff has a property interest in the funds in his prison account. The record here does not reveal the source of any funds in plaintiff's account. To the extent that they constitute monies received from friends and family outside the prison, plaintiff clearly has a property interest in them. Likewise, it appears that he has a property interest in any wages he has earned or may

earn while incarcerated in the Wyoming State Penitentiary.

Pursuant to Wyo.Stat. § 7–16–203 (1977), "[p]ersons in confinement in state institutions may receive compensation for services performed as specified by the board of charities and reform." Pursuant to Wyo. Stat. § 7–16–205 (1977), any such compensation shall be deposited in the prisoner's trust and agency account and shall be disbursed for the reasons, and in the order, specified in subsection (a). The funds may also be subject to fines levied as punishment for misconduct pursuant to rules and regulations promulgated by the charities and reform board in accordance with Wyo. Stat. § 7–16–204 (1977). Any remaining funds are to be paid to the prisoner upon his parole or final discharge. Wyo.Stat. § 7–16–205(a)(v) (1977). These statutes create a legitimate expectation that money not used for the specified reasons will be returned to the inmate at the end of his incarceration and, therefore, create a protected property interest in the funds.

Other courts have held that prisoners have a protected property interest in their prison trust accounts. *See Quick v. Jones,* 754 F.2d 1521, 1523 (9th Cir.1985); *Artway v. Scheidemantel,* 671 F.Supp. 330, 337 (D.N.J.1987); *Ruley v. Nevada Bd. of Prison Commr's,* 628 F.Supp. 108, 112 (D.Nev. 1986); *Jones v. Clark,* 607 F.Supp. 251, 254 (E.D.Pa.1984).

■ Given a valid property interest in the funds in the account, plaintiff cannot be deprived of the same without due process. Contrary to the argument of defendants, it has long been recognized that rights in property are basic civil rights. *Lynch v. Household Fin. Corp.,* 405 U.S. 538, 552, 92 S.Ct. 1113, 1122, 31 L.Ed.2d 424, 435 (1972). Section 1983 does not distinguish between personal liberties and property rights, and a deprivation of the latter without due process gives rise to a claim under § 1983. 405 U.S. at 549, 92 S.Ct. at 1120.

Defendants contend that plaintiff has not been deprived of his property without due process because he has adequate administrative and state post-deprivation remedies.

While defendants are correct that the United States Supreme Court has held that neither negligent nor intentional deprivations of property under color of state law that are random and unauthorized give rise to a § 1983 claim where the plaintiff has an adequate state remedy, *see Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203–04, 82 L.Ed.2d 393, 407 (1984) (intentional deprivation); *Parratt v. Taylor,* 451 U.S. 527, 541, 101 S.Ct. 1908, 1916, 68 L.Ed. 2d 420, 432 (1981) (negligent deprivation), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), those cases do not apply here.

Both *Parratt* and *Hudson* deal with random and unauthorized deprivations of property rather than deprivations according to some established state policy, procedure, or custom. As the Court explained in *Parratt:*

> The justifications which we have found sufficient to uphold takings of property without any predeprivation process are applicable to a situation such as the present one involving a tortious loss of a prisoner's property as a result of a random and unauthorized act by a state employee. In such a case, the loss is not the result of some established state procedure and the State cannot predict precisely when the loss will occur. It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place. The loss of property, although attributable to the State as action under "color of law," is in almost all cases beyond the control of the State. Indeed, in most cases, it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation.

451 U.S. at 541, 101 S.Ct. at 1916.

■ On the other hand, when the deprivation is not random and unauthorized, but is pursuant to an affirmatively established or *de facto* policy, procedure, or custom, the state has the power to control the deprivation and, therefore, generally must, in the absence of compelling reasons to the contrary, give the plaintiff a predeprivation

hearing. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265, 278 (1982); *Haygood v. Younger,* 769 F.2d 1350, 1357 (9th Cir.1985), *cert. denied,* 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986); *Lavicky v. Burnett,* 758 F.2d 468, 473 (10th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 882, 88 L.Ed.2d 917 (1986). In such cases, the availability of an adequate state post-deprivation remedy is irrelevant and does not bar a § 1983 claim. *See Sanders v. Kennedy,* 794 F.2d 478, 482 (9th Cir. 1986); *Rittenhouse v. DeKalb County,* 764 F.2d 1451, 1455 (11th Cir.1985), *cert. denied,* 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986); *Spruytte v. Walters,* 753 F.2d 498, 509 (6th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed. 2d 767 (1986); *Stana v. School Dist. of City of Pittsburgh,* 775 F.2d 122, 129 (3d Cir.1985).

■ Although plaintiff did not allege that the deprivation of his prison account funds was the result of an established state procedure in those exact words, his allegations suggested that the deprivation was not the result of a random and unauthorized act, but an established policy. The correspondence from defendants Shanyfelt and Shillinger supported this suggestion.

In determining the timing and nature of the hearing due a plaintiff, courts have balanced the following competing interests of the plaintiff and the state:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976).

The state of the record on appeal does not permit us to perform the balancing test necessary to determine the exact nature and timing of the hearing due plaintiff.

Nonetheless, since the record does not reveal " 'the necessity of quick action by the State or the impracticability of providing any predeprivation process,' " *see Logan,* 455 U.S. at 436, 102 S.Ct. at 1158 (quoting *Parratt,* 451 U.S. at 539, 101 S.Ct. at 1915), and the facts alleged by plaintiff indicate that defendants could have provided plaintiff with a hearing prior to depriving him of his property, we conclude that plaintiff stated a claim for relief based on a deprivation of his property without due process. Therefore, the district court erred in dismissing plaintiff's due process claim.

■ The district court did not err in dismissing plaintiff's claim for cruel and unusual punishment, however. The United States Supreme Court, in *Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), discussed when the conditions of a prisoner's confinement may rise to the level of cruel and unusual punishment. The Court stated that "[n]o static 'test' can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.' " 452 U.S. at 346, 101 S.Ct. at 2399 (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630, 642 (1958) (plurality opinion)).

Nonetheless, the Court has established some basic principles relating to cruel and unusual punishment. Thus, "[c]onditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399. *See also Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251, 260 (1986). Other conditions that "deprive inmates of the minimal civilized measure of life's necessities" may also constitute cruel and unusual punishment. *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399.

Following the reasoning of *Rhodes,* the United States Court of Appeals for the D.C. Circuit held, in *Inmates of Occoquan v. Barry,* 844 F.2d 828, 836 (D.C.Cir.1988),

that not all deprivations "rise to constitutional significance," and that only deprivations of "essential human needs" trigger the eighth amendment proscription against cruel and unusual punishment. Plaintiff, here, did not allege a deprivation of essential human needs. Rather, he alleged that he was deprived of "what little luxury" he had. While such a deprivation may be "restrictive and even harsh," *see Rhodes*, 452 U.S. at 347, 101 S.Ct. at 2399, it did not amount to the infliction of cruel and unusual punishment. Therefore, the district court did not err in dismissing plaintiff's claim for cruel and unusual punishment.

■ Turning to plaintiff's motion to supplement his complaint, Fed.R.Civ.P. 15(d) provides that a court may permit a party to serve a supplemental pleading setting forth transactions, occurrences, or events that have happened since the date of the pleading sought to be supplemented. Motions to supplement are addressed to the sound discretion of the trial court. *See Reid v. International Union, UAW, Dist. Lodge 1093*, 479 F.2d 517, 520 (10th Cir.), *cert. denied*, 414 U.S. 1076, 94 S.Ct. 592, 38 L.Ed.2d 483 (1973).

■ Leave to supplement a complaint should be liberally granted unless good reason exists for denying leave, such as prejudice to the defendants. *See Case–Swayne Co. v. Sunkist Growers, Inc.*, 369 F.2d 449, 462 (9th Cir.1966), *rev'd in part on other grounds*, 389 U.S. 384, 88 S.Ct. 528, 19 L.Ed.2d 621 (1967); *New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20, 28–29 (4th Cir.1963), *cert. denied*, 376 U.S. 963, 84 S.Ct. 1124, 11 L.Ed.2d 981 (1964); *United States v. Local 560 (I.B.T.)*, 694 F.Supp. 1158, 1187 (D.N.J.1988), *aff'd*, 865 F.2d 253 (3d Cir.1988); *Argus, Inc. v. Eastman Kodak Co.*, 552 F.Supp. 589, 602 (S.D.N.Y. 1982).

Plaintiff sought to supplement his complaint just seven days after he filed his original complaint. The supplement concerned events which took place after he filed the complaint, to wit: defendants went beyond freezing plaintiff's account and removed funds therefrom, in partial payment of the transportation bill, without providing plaintiff prior notice or an opportunity to be heard. Since plaintiff's motion was made promptly and concerned subsequently occurring facts relating to his original claim for deprivation of property without due process, the court should have granted it. On remand, the district court is directed to permit plaintiff to supplement his complaint.

As to plaintiff's motion for summary judgment, we review the district court's denial thereof *de novo*, applying the same standard as the district court under Fed.R. Civ.P. 56(c). *See Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). Summary judgment should only be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

■ Plaintiff asserted in his motion that, by filing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), defendants admitted all the allegations of plaintiff's complaint. Although the party moving to dismiss a complaint under Rule 12(b)(6) does admit the allegations of the complaint, it is only for purposes of ruling on the motion to dismiss. The admission does not extend beyond the immediate consideration of the dismissal motion. Therefore, defendants were not deemed to have admitted the allegations of the complaint for the purposes of plaintiff's motion for summary judgment.

The district court ruled on plaintiff's motion for summary judgment before defendants responded to it. Given the present state of the record, we cannot say that plaintiff is entitled to summary judgment. On remand, plaintiff may renew his motion if he so desires.

In conclusion, the district court erred in dismissing plaintiff's claim for deprivation of property without due process and in denying plaintiff's motion to supplement the complaint. Therefore, the judgment of the United States District Court for the District of Wyoming is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings. Plaintiff's

motion for enforcement of the judgment, filed with this court on October 24, 1988, is DENIED as moot.

The mandate shall issue forthwith.

ENTERED FOR THE COURT PER CURIAM.