Jeffrey L. ABBOTT, Sr.,
Plaintiff–Appellant,

v.

O. Lane McCOTTER, Gary W. Deland, R. Spencer Robinson, C. Kim Thompson, Lynn Jorgensen, M. Tamera Holden, Billie Casper, Margaret Petersen, Bruce A. Daniels, Scott Carver, Charles Hobbs, Jay B. Leslie, Lee Liston, Elzo Rex Talbot, Daniel Avis, Myrna Vigil, Richard Fischer, Andrew Hunt, Marilyn P. Woolston, Brent S. Wiechman, Dan Hutson, John Piatt, Defendants–Appellees.

No. 92–4196.

United States Court of Appeals, Tenth Circuit.

Jan. 18, 1994.

Blake S. Atkin, Salt Lake City, UT, for plaintiff-appellant.

Jeffrey L. Abbott, Sr., pro se.

Brent A. Burnett, Asst. Atty. Gen. (Jan Graham, Utah Atty. Gen., with him on the brief), Salt Lake City, UT, for defendants-appellees.

Before LOGAN and MOORE, Circuit Judges, and BROWN, District Judge.[*]

LOGAN, Circuit Judge.

Plaintiff Jeffrey L. Abbott, proceeding in forma pauperis (IFP), filed a 42 U.S.C. § 1983 complaint against guards, administrators, and other employees of the Utah Department of Corrections, alleging that they transferred plaintiff to administrative segregation without due process in violation of the Fourteenth Amendment and confiscated articles of plaintiff's personal property contrary to his state-created liberty interest. Plaintiff also argued that the wrongful transfer and property deprivation subjected him to condi-

tions amounting to cruel and unusual punishment in violation of the Eighth Amendment. Finally, plaintiff asserted an equal protection violation on the grounds that the conditions in administrative segregation were worse than the conditions experienced by prisoners in disciplinary segregation. The district court, adopting the report and recommendation of the magistrate judge, dismissed plaintiff's suit as "frivolous" under 28 U.S.C. § 1915(d). Plaintiff appealed. We affirm in part and reverse in part the district court's judgment.

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991) (citing *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)). But because "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits," the federal courts have discretion to dismiss claims filed IFP if they lack "an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 324–25, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989). In the instant case, the magistrate judge concluded and the district court agreed that the plaintiff's claims were both factually and legally frivolous. We review the § 1915(d) dismissal of plaintiff's suit for abuse of discretion. *Denton v. Hernandez,* — U.S. —, —, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

I

According to plaintiff's complaint, when he was transferred to administrative segregation, the deputy warden making the transfer told him the grounds for his reassignment were his "unwillingness to comply with rules and regulations" and "generally inappropriate behavior." I R. Tab 2, ¶ 37. The deputy warden allegedly told plaintiff: "[i]f your behavior is improved in fourteen (14) days, you will be considered for removal from the administrative segregation status, but if your

---

[*] The Honorable Wesley E. Brown, Senior United States District Judge, United States District Court for the District of Kansas, sitting by designation.

behavior has not changed, then you will be continued for another ninety (90) days:" *Id.* at ¶ 38. Plaintiff claims that he was given no more explanation, that he was not allowed to speak or ask questions of any of the defendants, and that the entire meeting with the deputy warden lasted three to five minutes. *Id.* at ¶¶ 40–43. Upon returning to his cell, plaintiff discovered numerous items of his personal property had been confiscated and the only items remaining were "some legal materials, one reading book and a standard issue of clothing and bedding." *Id.* at ¶¶ 47 & 51. A signed, but otherwise blank, property confiscation slip left on the floor of plaintiff's cell provided no explanation for the confiscation. *Id.* at ¶¶ 48–50.

Plaintiff filed formal grievances seeking the return of his various personal property items, including hair conditioner, baby oil, lotion, deodorant, a blue-covered Bible, and several religious magazines, during the course of his nearly seven-month stint in administrative segregation. *See* Appellant's Brief, App. C, Docs. 1–3 (hereafter App.). Most of plaintiff's grievances were formally denied on the grounds that plaintiff possessed the standard property allotment for persons in special intensive management[1] as delineated in the "Hobbs' Memo," allegedly promulgated one week after plaintiff's segregation began. *Id.*[2] Most of plaintiff's property was not returned until he was released from administrative segregation.

## II

When evaluating an IFP complaint, "[s]ection 1915(d) gives the district court 'the unusual power to pierce the veil of the complaint's factual allegations and dismiss [as frivolous] those claims whose factual contentions are clearly baseless.' " *Shabazz v. Askins*, 980 F.2d 1333, 1334 (10th Cir.1992) (quoting *Neitzke*, 490 U.S. at 327, 109 S.Ct.

at 1833). The district court's assessment must be weighted in favor of the plaintiff, and the "complaint may not be dismissed … simply because the court finds the plaintiff's allegations unlikely." *Denton*, —— U.S. at ——, 112 S.Ct. at 1733; *see also Northington v. Jackson*, 973 F.2d 1518, 1520 (10th Cir. 1992). An IFP lawsuit also may be dismissed under § 1915(d) as legally frivolous if the claims are "based on an indisputably meritless legal theory." *Neitzke*, 490 U.S. at 327, 109 S.Ct. at 1833; *Northington*, 973 F.2d at 1520. Dismissal for failure to state a claim under Rule 12(b)(6) and dismissal for frivolousness are not equivalent. "[A] finding of a failure to state a claim does not invariably mean that the claim is without arguable merit." *Neitzke*, 490 U.S. at 329, 109 S.Ct. at 1833; *see also Hall*, 935 F.2d at 1108–09.

## A

We uphold the district court's dismissal of plaintiff's equal protection claim, because the plaintiff made only conclusory allegations and pleaded no facts that describe any difference between the conditions in disciplinary segregation and administrative segregation. Similarly, we affirm the district court's dismissal of plaintiff's Eighth Amendment claims. "The warden can impose restrictive conditions of confinement upon plaintiff without violating the Eighth Amendment, as long as those conditions do not 'involve the wanton and unnecessary infliction of pain' or are not 'grossly disproportionate to the severity of the crime warranting imprisonment.' " *Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir.1987) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)). Plaintiff made no allegations in his complaint indicating that he suffered from wantonly or unnecessarily inflict-

---

1. Apparently, administrative segregation is a subcategory encompassed by the broader term "special intensive management." *See* App. C, Doc. 1 (Level II Response of Grievance Coordinator Casper).

2. At least two of the official responses to plaintiff's grievances specifically reference the "Hobbs' Memo," described as an interim directive concerning personal property retention of inmates in special intensive management. *See*

App. C, Docs. 2 & 3 (Level I Responses of Lt. Avis). Unfortunately, this memo is not a part of the record. On appeal, defendants do not rely upon the Hobbs' Memo. Rather, they argue that the regulations cited by plaintiff do not create the liberty interests he asserts. Therefore, we will consider the regulations cited by plaintiff and defendants and included in the record as the only binding and relevant regulations for purposes of determining this appeal.

ed pain or grossly disproportionate treatment in light of his conviction.

**B**

■ With respect to plaintiff's due process claims, we note that "[l]iberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). The Due Process Clause standing alone offers prisoners only a "narrow range of protected liberty interests." *Id.* at 467, 103 S.Ct. at 868. Transfer to less amenable or more restrictive quarters is the sort of confinement that a lawfully incarcerated individual should anticipate receiving in the course of serving his sentence. *Id.* at 468, 103 S.Ct. at 869–70. Therefore, "[c]lassification of the plaintiff into administrative segregation does not involve deprivation of a liberty interest independently protected by the Due Process Clause." *Bailey,* 828 F.2d at 652.

■ In *Hewitt,* the Supreme Court suggested that courts focus on "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates" when judging whether a particular state statute created a protected liberty interest in the prison context. 459 U.S. at 472, 103 S.Ct. at 871–72; *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 463, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989). Plaintiff argues that Utah prison regulations contain an exhaustive list of five "specific substantive predicates" for subjecting a prisoner to administrative segregation. *See* Appellant's Supplemental Brief at 4. Plaintiff's contention is undermined, however, by the first "specific predicate" listed in the regulations, which provides: "[i]nmates may be ad-

ministratively segregated *when circumstances make it necessary* to place an inmate in a more restrictive supervision level than that required by his assigned classification for non-punitive reasons." *Id.* (emphasis added). A regulation stating that an inmate may be administratively segregated "when circumstances make it necessary" does not provide the definite sort of specific substantive predicate required to cabin prison officials' discretion in a manner meaningful enough to create a protected liberty interest. Although five "predicates" are listed in the regulations, the vagueness contained in the first predicate belies plaintiff's argument that the list is exhaustive. No prison regulation or state statute we are aware of requires Utah prison officials to do more than they did in this case before subjecting an inmate to administrative segregation. Therefore, we cannot conclude that the district court abused its discretion in dismissing this claim as legally frivolous.

**C**

■ Turning from plaintiff's transfer to the confiscation of his property, we note that "[s]ection 1983 does not distinguish between personal liberties and property rights, and a deprivation of the latter without due process gives rise to a claim under § 1983." *Gillihan v. Shillinger,* 872 F.2d 935, 939 (10th Cir.1989) (citing *Lynch v. Household Fin. Corp.,* 405 U.S. 538, 549, 92 S.Ct. 1113, 1120, 31 L.Ed.2d 424 (1972)).[3] Because plaintiff's claim was dismissed under § 1915(d) as frivolous, we need not determine whether plaintiff's arguments would win on the merits, only whether the district court abused its discretion in concluding that plaintiff's claim was based on an "indisputably meritless legal

---

3. The plaintiff argues correctly that the magistrate judge and district court erred when they relied on the doctrine of *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), and *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), in dismissing plaintiff's due process claims as legally frivolous. "Both *Parratt* and *Hudson* deal with random and unauthorized deprivations of property rather than deprivations according to some established state policy, procedure, or custom." *Gillihan,* 872 F.2d at 939. When the alleged property loss is not "ran-

dom and unauthorized" but pursuant to "an affirmatively established or *de facto* policy, procedure, or custom, the state has the power to control the deprivation" and must generally give the plaintiff a hearing. *Id.* at 939–40. In the instant case, prison officials defend their actions as legitimate in light of plaintiff's assignment to administrative segregation and their claimed discretion to alter the property allowances specified in the Utah regulations. The confiscation of plaintiff's property is not fairly categorized as the type of unforeseeable, random property deprivation addressed in *Parratt* and *Hudson.*

theory." *Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1833; *see also McKinney v. Oklahoma,* 925 F.2d 363, 365 (10th Cir.1991) ("[W]henever a plaintiff states an arguable claim for relief, dismissal for frivolousness under § 1915(d) is improper, even if the legal basis underlying the claim ultimately proves incorrect.").

Because the Due Process Clause does not give prisoners a right to retain unlimited personal property, we apply the principles expressed in *Hewitt* and *Thompson* to determine if Utah's prison regulations arguably employ "explicitly mandatory language" and "specific substantive predicates" in a manner sufficient to create a protected interest in particular amounts and types of property. Although plaintiff did not cite specific Utah regulations in his § 1983 complaint, plaintiff did reference a prison policy, which "policy was, & still is, in mandatory language & gave the Plaintiff a liberty interest in retaining all items confiscated." I R. Tab 2, ¶ 57, *see also id.* ¶¶ 55, 56, 66. Regulations, such as those described by plaintiff, exist and are set out in the appendix to plaintiff's appellate brief.

These regulations, on their face, establish "minimum limits [which] may be increased at the discretion of the Deputy Warden" for nine categories of "daily activities." App. A at 2–3. Possession of property is categorized as a "daily activity," and the regulations provide that: "[i]nmates shall be allowed property consistent with Level I property outlined in FDr14/08, 'Inmate Property Matrix.'" *Id.* at 3. Thus, the above-quoted provisions, employing strong mandatory language, state that the property allowance is a "minimum limit" and that the prisoner "shall" be allowed to possess the property listed.[4] The specified property matrix states that prisoners in administrative segregation are allowed to possess a variety of property, including up to *ten* books and *ten* magazines. *See* App. B. Despite plaintiff's grievances and requests, prison officials refused to return plaintiff's confiscated Bible on the grounds that he already had *one* book and that inmates in

intensive management were limited to a single book. *See* App. C, Doc. 1 (Level I Response of Richard Fischer). Thus, plaintiff's claim that he has a protected liberty interest in his property is legally arguable and not frivolous.

"Given a valid property interest ... plaintiff cannot be deprived of the same without due process." *Gillihan,* 872 F.2d at 939. When a property deprivation is pursuant to a policy or custom, the state must give the plaintiff a predeprivation hearing "in the absence of compelling reasons to the contrary." *Id.* at 939–40. According to plaintiff, much of his property was taken from his cell without explanation while he met with a deputy warden about his transfer to administrative segregation. The loss of his property was not discussed at that meeting. Postdeprivation explanations of the confiscations came in response to plaintiff's formal grievances seeking return of his missing possessions. The justifications contained in the official responses, as noted above, appear to be in direct conflict with established Utah regulations. Based on the briefs and the record, it is not legally or factually frivolous to argue that the defendants infringed a protected interest without due process.

Therefore, we conclude that plaintiff's due process claim is not based on an "indisputably meritless legal theory" and should not have been dismissed pursuant to § 1915(d). It seems obvious that plaintiff has named some as defendants who are not proper parties. But that determination is for the district court on remand.

AFFIRMED in part and REVERSED in part; REMANDED for further proceedings consistent with this opinion.

---

4. On appeal, defendants argue that Regulation FDr25/07.06(E) provides "unhindered discretion" for prison officials to make changes in the "daily activities," such as property possession. *See* Appellee's Brief at 8; App. A at 5. When that regulation is read logically, in conjunction with the regulations stating "minimum limits" on property that inmates "shall" be allowed to possess, it appears to provide a procedure for exercising the granted discretion to *increase* property allowances rather than to decrease the clearly-defined property minimums.