86 F.3d 1166
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Edward Lee CLEMMONS, Plaintiff-Appellant,
v.
Don E. THOMAS, Deputy Warden of Programs, David Suttle, "B"
Unit Team Manager; Mike A. Nelson, Waden;
Captain Hendricks, (CSIII) of I and I;
Mike Slusher, Deputy Warden,
Defendants-Appellees.
 Nos. 94-3172, 94-3173.
 United States Court of Appeals, Tenth Circuit.
 May 29, 1996.
 
 Before SEYMOUR, Chief Judge, McKAY, and HENRY, Circuit Judges.
 
 
 1
 ORDER AND JUDGMENT*
 
 
 2
 After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not assist in the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. This case is therefore ordered submitted without oral argument.
 
 
 3
 Plaintiff-appellant Edward Lee Clemmons, a prisoner in the custody of the Kansas Department of Corrections, filed these related pro se civil rights actions against several Kansas corrections officials. Mr. Clemmons alleges that his constitutional rights were violated when he was transferred from the Lansing Correctional Facility to the El Dorado Correctional Facility and placed in administrative segregation without a hearing. After considering the report filed by the Kansas Department of Corrections pursuant to Martinez v. Aaron, 570 F.2d 317 (10th Cir.1978), the district court granted summary judgment to the defendants.
 
 
 4
 We grant Mr. Clemmons's motion to proceed in forma pauperis. For the reasons set forth below, we vacate the district court's grant of summary judgment and remand these cases for proceedings consistent with this opinion and the Supreme Court's recent decision in Sandin v. Conner, 115 S.Ct. 2293 (1995).
 
 I. BACKGROUND
 
 5
 In his complaints, Mr. Clemmons alleges that on June 7, 1993, corrections officials removed him from his cell at the Lansing Correctional Facility, transferred him to the El Dorado facility, and placed him in administrative segregation without conducting a hearing. According to Mr. Clemmons, he has remained in administrative segregation at the El Dorado facility and has never received an adequate hearing addressing the reasons for his placement. His complaints assert that his placement in administrative segregation violated his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment as well as his rights under Kansas regulations.
 
 
 6
 In the Martinez report, the defendants assert that Mr. Clemmons's transfer to the El Dorado facility and his placement in administrative segregation arose out of disturbances at the El Dorado and Lansing facilities. They explain that an officer was killed in a fight at the Lansing facility and that a guard and an inmate were injured. According to the defendant officials, Mr. Clemmons was placed in administrative segregation in June 1993 pursuant to Kan. Admin. Regs. 44-14-302(g) because he was a "security risk." Rec., Clemmons v. Thomas, No. 94-3172 (district court no. 93-3273-DES), doc. 16 (Martinez report), Ex. 1. The defendants maintain that Mr. Clemmons attempted to interfere with the investigation of the murder of the corrections officer. Id. They add that Mr. Clemmons's placement in administrative segregation at the El Dorado facility was regularly reviewed by responsible officials and that applicable regulations authorized the placement of inmates in administrative segregation prior to a hearing in emergency situations. See Kan. Admin. Regs. 44-14-303(b)-(c); Rec., Clemmons v. Thomas, No. 94-3172 (district court no. 93-3273-DES), doc. 16 (Martinez report), at 6-7.
 
 
 7
 In granting summary judgment to the defendant officials, the district court concluded that "[c]ontrary to plaintiff's reading of Kansas prison regulations, these state administrative regulations do not create a protected liberty interest in remaining in the general prison population." Rec., Clemmons v. Thomas, No. 94-3172 (district court no. 93-3273-DES), doc. 23, at 3. As a result, the court reasoned, "[N]o particular process is constitutionally due or required in this case." Id. at 3-4. Mr. Clemmons challenges this conclusion on appeal.[1]
 
 II. DISCUSSION
 
 8
 We review the district court's grant of summary judgment de novo, applying the same standards as the district court under Fed.R.Civ.P. 56(c). Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). Summary judgment is warranted only if the uncontroverted material facts establish that the moving party is entitled to judgment as a matter of law. Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991). We construe the record in the light most favorable to the nonmoving party. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991). In addition, because Mr. Clemmons is proceeding pro se, we must construe his pleadings liberally. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991).
 
 
 9
 On appeal, Mr. Clemmons contends that he has a liberty interest in remaining in the general prison population (i.e. in not being placed in administrative segregation) and that the defendant officials deprived him of this interest by placing him in administrative segregation without a hearing.[2] The Supreme Court has noted that "[l]iberty interests protected by the Fourteenth Amendment may arise from two sources--the Due Process Clause itself and the laws of the States." Hewitt v. Helms, 459 U.S. 460, 466 (1983). As a general rule, the placement of an inmate in administrative segregation does not constitute the deprivation of a liberty interest independently protected by the Due Process Clause. Bailey v. Shillinger, 828 F.2d 651, 653 (10th Cir.1987) (per curiam). However, at the time of Mr. Clemmons's placement in administrative segregation in June 1993, the Supreme Court had held that certain state statutes and regulations concerning administrative segregation could create protected liberty interests. See Hewitt, 459 U.S. at 471-72; see also Abbott v. McCotter, 13 F.3d 1439, 1442 (10th Cir.1994) (discussing Hewitt ).
 
 
 10
 In Hewitt, the Court concluded that Pennsylvania regulations conferred upon inmates a protected liberty interest in remaining in the general prison population. In reaching this conclusion, the Court focused on several factors: (1) the fact that the state regulations established procedures governing prison officials' use of administrative segregation; (2) the regulations' use of "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed;" and (3) the fact that the regulations provided that "administrative segregation will not occur absent specific substantive predicates--viz.,'the need for control,' or 'the threat of a serious disturbance.' " Id. at 471-72. Following Hewitt, a number of circuits have held that state regulations regarding administrative segregation establish liberty interests protected by the Due Process Clause. See, e.g., Layton v. Beyer, 953 F.2d 839, 846 (3d Cir.1992) ("Similar to the statutory language at issue in Hewitt, there are explicit substantive predicates that must be met before an inmate may be placed in [administrative segregation] under the New Jersey regulations. The inmate must present a threat to the safety of others, a threat to property, or a threat to the operation of a facility."); Russell v. Coughlin, 910 F.2d 75, 77 (2d Cir.1990) (holding that New York regulations regarding administrative regulations established protected liberty interest). But see Templeman v. Gunter, 16 F.3d 367, 369 (10th Cir.1994) (holding that Colorado regulation providing that administrative segregation "shall be ordered in the sound exercise of discretion by the classification officer or committee" did not establish a liberty interest in remaining in the general prison population); Abbott, 13 F.3d at 1442 (concluding that Utah prison regulation that authorized placement in administrative segregation "when circumstances make it necessary" did not create a liberty interest).
 
 
 11
 Significantly, in Hewitt, the Supreme Court also described the constitutionally required procedure to be followed by officials placing an inmate with a protected liberty interest in administrative segregation. Acknowledging the deference generally afforded to prison officials in making administrative decisions, the Court held that "[a]n inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." Id. at 476. Importantly, the inmate's opportunity to present his views may be given to him after he has first been transferred to administrative segregation. Id. at 476 n. 8 ("The proceeding must occur within a reasonable time following an inmate's transfer...."); Soto v. Walker, 44 F.3d 169, 172 (2d Cir.1995); Tyler v. Black, 811 F.2d 424, 427-29 (8th Cir.), reh'g granted, 825 F.2d 1219 (1987) (en banc), withdrawn in part, vacated in part, and adopted in part, 865 F.2d 181 (en banc), cert. denied, 490 U.S. 1027 (1989).
 
 
 12
 During the pendency of this appeal, the Supreme Court decided Sandin. The Sandin Court criticized the approach taken in Hewitt in determining whether state laws and regulations created liberty interests in remaining in the general prison population and abandoned Hewitt's methodology. See Sandin, 115 S.Ct. at 2298-2300. The Court held that, with respect to prisoners, the states' creation of liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 2300 (citation omitted).
 
 
 13
 Applying this test to the facts before it, the Sandin Court concluded that a Hawaii prisoner who had been placed in segregation for disciplinary reasons did not have a liberty interest in remaining in the general prison population. Id. at 2301-02. As a result, it rejected the prisoner's argument that he was entitled to the procedural protections set forth in Wolff v. McDonnell, 418 U.S. 539 (1974), prior to his placement in disciplinary segregation. The Court noted that "[t]he record shows that, at the time of Conner's punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody" and that his placement in disciplinary segregation "did not work a major disruption in his environment." Id. at 2301. See generally Orellana v. Kyle, 65 F.3d 29, 32 (5th Cir.1995) (per curiam), cert. denied, 116 S.Ct. 736 (1996) (noting that "the ambit of [prisoners'] potential Fourteenth Amendment due process liberty claims has been dramatically narrowed [by Sandin ].").
 
 
 14
 Because Sandin applied this new approach to the litigants before it, we must apply this approach to the instant case--even though the defendant officials placed Mr. Clemmons in administrative segregation before Sandin was decided. See Autoskill, Inc. v. National Educ. Support Sys., Inc., 994 F.2d 1476, 1488 (10th Cir.) ("It is now settled that '[o]nce retroactive application is chosen for any assertedly new rule, it is chosen for all others who might seek its prospective application.' " (quoting James B. Beam Distilling Co. v. Georgia, 111 S.Ct. 2439, 2447-48 (1991))), cert. denied, 114 S.Ct. 307 (1993); see also In re Wicks, 5 F.3d 1372, 1373 (10th Cir.1993); Gray v. Phillips Petroleum Co., 971 F.2d 591, 596 (10th Cir.1992). However, although Sandin 's application of its rule to its own facts suggests that administrative segregation usually does not implicate a liberty interest, we do not have a sufficient record to make that determination in this appeal. In particular, because there is no evidence in the record addressing the conditions of Mr. Clemmons's confinement in administrative segregation, we cannot determine whether Mr. Clemmons's placement imposed "atypical and significant hardship ... in relation to the ordinary incidents of prison life," Sandin, 115 S.Ct. at 2300, and whether Mr. Clemmons possessed a liberty interest that triggered the procedural protections of the Due Process Clause. See Whitford v. Boglino, 63 F.3d 527, 533 (7th Cir.1995) (per curiam) ("[B]efore we may even consider recovery for the alleged violations of [the prisoner's] due process rights, additional factual findings concerning the nature of [his] confinement in segregation and whether it caused a 'major disruption in his environment' and imposed an 'atypical and significant hardship' on him are needed.") (citation omitted) (quoting Sandin, 115 S.Ct. at 2299-2301).
 
 
 15
 Accordingly, we vacate the district court's order granting summary judgment to the defendant prison officials and remand the case for further proceedings in light of Sandin. On remand, the district court should determine whether, under the Sandin standard, "atypical and significant hardship", Mr. Clemmons had a protected liberty interest in remaining in the general prison population and, if so, whether the defendant prison officials afforded him the required procedural protections.[3]
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 [1]
 In Clemmons v. Summers, No. 94-3173 (district court no. 93-3271-DES), Mr. Clemmons also alleged that the defendant officials violated his First Amendment rights by depriving him of legal materials and religious texts for an eight day period when he was first transferred to the El Dorado facility in June 1993. As to this allegation, the district court granted summary judgment in favor of the defendants. Mr. Clemmons does not challenge this conclusion in his appellate briefs, and his First Amendment claims are therefore not before us
 Additionally, upon review of the record, we conclude that Mr. Clemmons has failed to present evidence indicating that his rights under the Equal Protection Clause of the Fourteenth Amendment were violated. Accordingly, we will focus on Mr. Clemmons's allegation that his placement in administrative segregation iolated his rights under the Due Process Clause.
 
 
 [2]
 Mr. Clemmons also argues that the violation of certain Kansas regulations concerning administrative and disciplinary segregation violated his rights under the Due Process Clause. However, "[t]here is no constitutional violation when state actors fail to meet their own regulations, so long as the minimum constitutional requirements have been met." Black v. Parke, 4 F.3d 442, 448 (6th Cir.1993); Giovanni v. Lynn, 48 F.3d 908, 912 (5th Cir.), cert. denied, 116 S.Ct. 167 (1995). Accordingly, the issue in this case is whether the procedures followed by the defendant prison officials satisfied the requirements of the Due Process Clause--not whether the procedures complied with the requirements of the Kansas regulations
 
 
 [3]
 We are unable to determine from the record before us how long Mr. Clemmons has remained in administrative segregation. The records attached to the Martinez report include forms documenting review of Mr. Clemmons's placement, but the most recent of these forms is dated November 6, 1993. On remand, in the event that the court concludes Mr. Clemmons has a liberty interest in remaining in the general prison population, the length of Mr. Clemmons's placement in administrative segregation should be a matter to be addressed by the district court