**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 10, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOSE MEDINA ESCOBAR,

Plaintiff-Appellant,

v.

EDWARD MORA; RENEE OLIVETT; HARLAN WOOLFOLK; WILLIAM COLTON; FRANK HAMULA; MARK MATTHEWS ; J. BROWN; J. SIMS; E. DICLUSION,

Defendants-Appellees,

and

L. REID; K. COOPER; E. CELLA; T. HAUCKS; E. PERRY; D. GALLAGHER; SGT. BINDER; C/O VALDEZ; A. LUNA; R. WENCL; J. WERMERS; C/O JACKSON; L. MONTOYA; LT. PAULINO; LT. JOHN DOW; C/O SANTOS; C/O RAYMOND; SGT. D. SMITH; C/O WILLIAMS; C/O BALL; LT. CONWAY; DESANTOS; CTP MIKLICH; SGT. OATES; DR. CRANEY; NURSE RITA; C/O MARTIN; SGT. GONZALES,

Defendants.

No. 11-1422
(D.C. No. 1:06-CV-01222-CMA-KLM)
(D. Colo.)

---

## ORDER AND JUDGMENT*

Before **HOLMES**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **EBEL**, Circuit Judge.

Plaintiff Jose Medina Escobar brought this civil rights action challenging various aspects of his conditions of confinement at the Colorado State Penitentiary (CSP) in Canon City, Colorado. He now appeals from the entry of judgment in favor of defendants, specifically with respect to two claims (Claims One and Seven). We affirm for the reasons explained below, which largely track those of the district court.

### I. RELEVANT DISTRICT COURT DECISIONS

This case has a fairly complicated history, much of which is immaterial to our review of the district court's disposition of Claims One and Seven. As relevant here, Claim One encompassed two Eighth Amendment allegations: (a) an incident of excessive force in January 2004, involving defendants Brown, Sims, and Diclusion,[1]

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] In his appellate brief, Mr. Escobar also refers to defendants Raymond and Gonzales, but they were not involved in Claim One. In any event, the excessive force claim (Claim Six) against defendant Raymond is subject to the same legal deficiency as Claim One and our disposition here would apply to both. Defendant (continued)

and (b) a fifteen-month period in which defendant Mora, with the acquiescence and encouragement of defendant Olivett, spat or pretended to spit into Mr. Escobar's breakfast and lunch, prompting him to forgo eating these meals and ultimately to lose some thirty pounds. On summary judgment, the district court dismissed the former aspect of Claim One without prejudice for failure to exhaust prison remedies. *See* 42 U.S.C. § 1997e(a). It dismissed the latter aspect with prejudice for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B)(i). The district court noted that the scope of Claim One was arguably expanded by allegations included in the final pretrial order that defendants Mora and Olivett had filed false disciplinary reports against Mr. Escobar and had hindered his access to the courts by depriving him of legal materials. The district court dismissed these additional matters for failure to state a claim.

The focus of Claim Seven was an alleged incident of excessive force in May 2007, involving CSP officers Matthews, Colton, Hamula, and Woolfolk. The district court dismissed this claim without prejudice for failure to exhaust prison remedies. In the final pretrial order Mr. Escobar also alleged that these defendants had filed false disciplinary reports against him and had denied him medical attention. The district court dismissed both of these additional matters for failure to state a claim, though it specified that the dismissal of the latter was without prejudice.

---

Gonzales was dismissed from the case for lack of service in an unchallenged minute order unrelated to the substance of this appeal.

## II. REVIEW OF DISTRICT COURT DECISIONS

We review the above rulings de novo. *Howard v. Waide*, 534 F.3d 1227, 1242-43 (10th Cir. 2008) (dismissal for failure to state a claim); *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007) (summary judgment based on failure to exhaust prison remedies). At the outset, we note that it was entirely proper for the district court to resolve the exhausted claims on the merits while dismissing other claims for failure to exhaust. *See Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) (noting Supreme Court's rejection of "total exhaustion" rule in *Jones v. Bock*, 549 U.S. 199, 219-21 (2007)).

### A. Failure to Exhaust

In an order issued December 16, 2010, the district court dismissed the excessive force claim against defendants Brown, Sims, and Diclusion for failure to exhaust prison remedies. *See Escobar v. Brown*, No. 06-cv-01222, 2010 WL 5230874, at *3-*4 (D. Colo. Dec. 16, 2010). Mr. Escobar does not dispute that he failed to exhaust this claim, but insists his failure to complete the prison grievance procedure should be excused for various reasons. We agree with the district court that none of these excuses are persuasive.

Mr. Escobar argues in general terms that filing restrictions (imposed for his abuse of the grievance procedure) limiting him to one grievance per month had impeded his ability to exhaust. But he was able to file grievances over other matters while the restrictions were in effect and he does not explain how the restrictions

prevented him from filing a grievance over the particular allegations at issue here. Similarly, his conclusory complaints about not being provided proper grievance forms and having grievances confiscated or lost in the mail are belied by his own ample grievance record and in any event are not tied by specific factual allegations to particular instances such as the one at issue here. He also generally complains that he faced threats of retaliation for using the grievance process, but again, as the district court noted, his conclusory allegations are belied by his own practice (indeed, on appeal he specifically states that the alleged retaliatory threats did not in fact dissuade him from pursuing prison remedies). The onus was on Mr. Escobar to show that the alleged impediments to exhaustion existed and did in fact prevent or deter him from using the prison grievance procedure for the unexhausted claims. *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). He failed to do so and the district court therefore properly enforced the exhaustion requirement.

In its order issued August 22, 2011, the district court applied the exhaustion doctrine to dismiss the excessive force allegations included in Claim Seven against defendants Matthews, Colton, Hamula, and Woolfolk. *See Escobar v. Mora*, No. 06-cv-01222, 2011 WL 3665391, at *6-*7 (D. Colo. Aug. 22, 2011). The court held that although Mr. Escobar had not completely bypassed the grievance procedure, he had not properly completed it, which is equally fatal under § 1997e(a), *see Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 1691 (2011). The court noted that instead of initiating a grievance following the

alleged incident, he tacked it onto a prior grievance that was then at the second step of the three-step process, in violation of a prison regulation that specifically prohibits adding new claims to grievances as they progress through the process, *see* R. Vol. 1 at 1139 (setting out AR 850-04-IV-E(2)). The district court also noted that he belatedly filed another grievance over the incident but failed to pursue that through the third step of the process. Again, Mr. Escobar does not dispute these deviations from proper grievance procedure, but relies on the same excuses, undercut by the same deficiencies, discussed above in connection with the excessive force allegations included in Claim One.[1] We therefore affirm the district court's dismissal of this claim as well.

**B. Failure to State a Claim**

**1. Allegations of spitting into plaintiff's food**

**a. Constitutional violation**

The district court dismissed plaintiff's claim against defendants Mora and Olivett because in its view their spitting into his food simply did not rise to the level of an Eighth Amendment violation. The court stated:

> While the notion of eating food that has been spat into does make one cringe, the case law renders clear that Plaintiff's bare allegations do

[1] He also complains that prison officials did not timely resolve the step-two grievance in which he initially sought redress for this claim. Aside from the fact that his bypass of the first step was improper in any event, we note that a prison delay in responding to a grievance would not excuse a prisoner's inaction, since regulations specify that a prisoner may proceed to the next step once the deadline for the prison's response expires, s*ee* R. Vol. 1 at 1142 (setting out AR 850-04-IV-I(1)(d)).

> not rise to the level of a constitutional violation. Even if Plaintiff's food was spat into, Plaintiff has not alleged and cannot prove that such conduct contaminated the food, rendered it poisonous, or that such food made Plaintiff ill.

*Escobar*, 2011 WL 3665391, at *5.[2] In essence, the district court relied on the distinction between merely unpleasant prison conditions that are not actionable and unhealthy or dangerous prison conditions that are actionable, as drawn in such cases as *DeSpain v. Uphoff*, 264 F.3d 965 (10th Cir. 2001):

> The first requirement [for an Eighth Amendment claim based on conditions of confinement] is that the conditions complained of must be "sufficiently serious" to implicate constitutional rights. . . . In order to satisfy this prong of the *Farmer* test, a prisoner must show that conditions were more than uncomfortable, and instead rose to the level of "conditions posing a substantial risk of serious harm" to inmate health or safety.

*Id.* at 973 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). As the district court noted, there is no allegation that the spitting carried any inherent or particular

---

[2] At one point the district court also suggested that defendants' conduct reflected mere negligence not actionable under the Eighth Amendment. *See Escobar*, 2011 WL 3665391, at *5. But Mr. Escobar alleged defendants were "malicious and sadistic in their effort to starve [him] and cause him mental and psychological distress and anguish." R. Vol. 1 at 50. Given the nature of the alleged misconduct, we cannot say this allegation of a deliberate state of mind is implausible. If the *intended result* of defendants' conduct objectively rose to the level of a constitutional injury, dismissal would not be warranted on the ground that they subjectively did not act with the deliberate indifference required for an Eighth Amendment violation, *see generally Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002) (discussing state of mind requirement for Eighth Amendment claim of food deprivation). Accordingly, our focus is on the nature and extent of the harm intentionally caused by defendants.

danger to plaintiff's health or safety, nor is there any allegation of consequent illness or poisoning.

Mr. Escobar did allege, however, that he had suffered "mental and psychological distress and anguish" and had lost thirty pounds as a result of defendants' conduct. R. Vol. 1 at 50; *see also id.* at 62 (request for relief seeking damages for "severe mental and emotional distress and anguish"). Cognizable injury under the Eighth Amendment includes psychological harm. *See Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 810 (10th Cir. 1999); *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992); *see also Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010) (collecting cases and emphasizing in this regard the "concepts of dignity, civilized standards, humanity and decency embodied in the Eighth Amendment" (internal quotation marks omitted)). Thus, prison conditions or practices like those alleged here that degrade, humiliate, or taunt inmates can give rise to actionable claims under the Eighth Amendment if they are sufficiently egregious. *See Perkins*, 165 F.3d at 811 (requiring inmate to wear face mask branding him an HIV carrier, allegedly to humiliate and punish him whenever he left his cell, could give rise to Eighth Amendment claim); *Northington*, 973 F.2d at 1524 (placing revolver to inmate's head and threatening to shoot could give rise to Eighth Amendment claim); *see also Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (noting "taunting" and "humiliation" as circumstances contributing to Court's holding that handcuffing inmate to hitching post without access to bathroom facilities "violated the basic

concept underlying the Eighth Amendment, which is nothing less than the dignity of man" (internal quotation marks omitted)).

Moreover, plaintiff's thirty-pound weight loss complemented his alleged mental distress, giving an objective physical dimension to his injury.[3] *See generally Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002) (recognizing that substantial food deprivations are actionable). Not all weight loss reflects an unconstitutional deprivation, of course, and some weight loss may permissibly arise from the enforcement of penologically legitimate rules, *see, e.g.*, *Freeman v. Berge*, 441 F.3d 543, 544-45, 547 (7th Cir. 2006) (noting "there is a difference between using food deprivation as a punishment and establishing a reasonable condition to the receipt of food," and upholding enforcement of rules barring delivery of food to cell for health or safety reasons). However, the conduct alleged here served no legitimate penological interest at all.

We have repeatedly held that such an absence of a legitimate penological interest lends support to an asserted constitutional violation. *See, e.g.*, *Mata v. Saiz*, 427 F.3d 745, 758 (10th Cir. 2005) (noting unwarranted delay in providing medical care did not serve any legitimate penological purpose); *Smith v. Cochran*, 339 F.3d 1205, 1213 (10th Cir. 2003) (noting "sexual abuse of a prisoner by a correctional officer has no legitimate penological purpose" (internal quotation marks omitted));

---

[3] We are mindful that some physical injury must be present to make an inmate's claim for psychological injury actionable. *See* 42 U.S.C. § 1997e(e).

*DeSpain*, 264 F.3d at 978 (noting use of pepper spray as a "practical joke" without any legitimate penological purpose reflected malicious and sadistic use of force). The only purpose of spitting into plaintiff's meals would be to taunt and degrade him, leaving him a Hobson's choice between accepting defiled food or going without the meal. Under these circumstances, we cannot dismiss the significance of plaintiff's weight loss, as the district court did, by characterizing it as "a result of Plaintiff's own choice to not eat his breakfasts." *Escobar*, 2011 WL 3665391, at *5.

Under the unique circumstances of this case, we cannot agree with the district court's reasoning and its ultimate conclusion that Mr. Escobar's allegations do not evince an Eighth Amendment violation. The district court's rationale for dismissing Mr. Escobar's claim essentially comes down to this categorical assertion: although it might render food disgusting or offensive to the sensibilities, the practice of spitting into inmate food is so intrinsically innocuous that spitting into two of an inmate's three daily meals for a period of fifteen months, does not, as a matter of law, rise to the level of an Eighth Amendment violation absent allegations of bacterial, viral, parasitic, or other like contamination, even if the spitting causes the inmate to forgo eating (resulting in substantial weight loss).

We acknowledge that there is no directly relevant Supreme Court or Tenth Circuit authority to guide our resolution of this question. And the case law from other jurisdictions that deals directly with spitting into inmate food is generally

unpublished and inconclusive.[4] However, this dearth of precedent notwithstanding, given the totality of the circumstances discussed above, we are unwilling to say that the conduct alleged here failed to state a claim for violation of the Eighth Amendment. We also underscore the particular importance to our holding of the extensive duration of the alleged wrongful conduct. Mr. Escobar does not allege a single isolated incident of spitting into his food, however reprehensible or disgusting that might be. As alleged, the wrongful practice of spitting into his food—indeed, spitting daily into two of his three meals—lasted for fifteen months. Furthermore, of like significance to us is the fact that (as alleged) defendants Mora and Olivett had absolutely no legitimate penological purpose for engaging in their conduct; their aim was to taunt or degrade Mr. Escobar. And, as a consequence, they inflicted psychological injury upon him.

In sum, based upon the totality of the unique circumstances presented here, we conclude that the district court erred in concluding that Mr. Escobar failed to state a claim for violation of his Eighth Amendment rights. Yet, as we assess this case, that

---

[4] Compare, for example, *Conquest v. Layton*, 2011 WL 6258467, at *3 n.5 (D. Md. Dec. 13, 2011) (holding that spitting into inmate's food did not rise to level of constitutional violation); *Jones v. Jensen*, 2011 WL 2938464, at *3 (W.D. Mich. July 19, 2011) (same); *Davis v. Putnam*, 2011 WL 1298117, *2 (E.D. Cal. March 31, 2011) (same); *Bee v. Krupp*, 2009 WL 2981910, at *3 (S.D.N.Y. Sept. 15, 2009) (same) with *Thompson v. Mich. Dep't of Corr.*, 2000 WL 1597844, at *2 (6th Cir. Oct. 20, 2000) (holding that spitting into inmate's food did rise to level of constitutional violation); *Williams v. Klem*, 2011 WL 2970303, at *11 n.2 (M.D. Pa. May 10, 2011) (same), *adopted by district court*, 2011 WL 2960869 (M.D. Pa. July 20, 2011).

is not the end of the matter. We may affirm the district court's dismissal on any legal basis supported in the record, *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1135 n.1 (10th Cir. 2000), and we do so on the basis of the qualified immunity defense that defendants asserted in their answer, *see Gomes v. Wood*, 451 F.3d 1122, 1124, 1133 (10th Cir. 2006).[5]

**b. Qualified immunity**

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[6] *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (further quotation omitted)), *cert. denied*, 131 S. Ct. 2884 (May 2, 2011). "Whether [the plaintiff] has alleged a violation of his clearly established constitutional rights to overcome [defendants'] defense of qualified immunity is an issue of law," *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011), and as such is a proper subject for de novo determination on appeal, *see Lewis v. Tripp*, 604 F.3d 1221, 1226 (10th Cir. 2010). "Ordinarily, for the law to be clearly

---

5 The parties must also have had a fair opportunity to address the defense, *Gomes*, 451 F.3d at 1133, which they did here, in connection with a motion pursued earlier in the proceedings by defendants. The procedural circumstances of that motion, which raise a waiver question, are discussed later in this decision.

6 Any request for equitable relief regarding the spitting claim was mooted years ago by the removal of defendant Mora from any connection with Mr. Escobar's daily food service.

established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Clark,* 625 F.3d at 690 (internal quotation marks omitted). But in certain circumstances "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Ultimately, the "relevant inquiry [is] whether the law put officials on fair notice that the described conduct was unconstitutional." *Id.* (internal quotation marks omitted).

As evident from our discussion of the merits, there are no controlling decisions on point from the Supreme Court or from this circuit, nor is there a clear weight of authority in other courts. And while we have extrapolated from general principles here to hold that Mr. Escobar stated an Eighth Amendment claim, we cannot say that the analytical bridge from the former principles to the latter holding impressed itself upon us with the clarity necessary to conclude that defendants were on fair notice that their conduct rose to the level of a constitutional violation. We therefore hold that they have a valid qualified immunity defense. The only question that remains is whether they waived that defense during earlier proceedings in the case.

**c. Firm waiver rule**

The district court's ruling that Mr. Escobar's allegations of spitting failed to state an Eighth Amendment claim, *see Escobar*, 2011 WL 3665391, at *5, actually

reflected a reconsideration and change of view on the matter. Earlier in the case, the district court denied a motion asserting qualified immunity as to this claim, holding that Mr. Escobar had stated a cognizable constitutional claim and that the claim was based on clearly established law. *See Escobar v. Reid*, 668 F. Supp. 2d 1260, 1297 (D. Colo. 2009). More to the point here, the district court denied the motion by adopting a magistrate judge's recommendation to which defendants had not objected, which raises the question whether this circuit's "firm waiver rule" bars a favorable ruling for defendants on any of these matters now, *see generally Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010) (discussing firm waiver rule under which an unexcused failure to object to a magistrate judge recommendation waives appellate review of issues resolved adversely by the recommendation).

We begin by noting that the district court's consideration of the matter was not barred by the firm waiver rule. Regardless of the lack of objection, a district court may review, de novo if it wishes, any aspect of a recommendation made by the magistrate judge. *Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991). And if the district court elects to consider an unobjected-to issue and rejects the magistrate judge's recommendation, it would make no sense to invoke the firm waiver rule—which ordinarily applies to recommendations adopted by the district court, not those it rejects. *See* 12 Charles Alan Wright et al., Fed. Prac. & Proc. §3070.1 at 372 (2d ed. 1997) (noting that "appellate review is fully available" when district court diverges from

recommendation of magistrate judge).[7] To hold otherwise would be to embrace the facially untenable view that a district court's dispositive ruling could not be defended on appeal by the very party whom it favored. But there is a caveat. We have held that the firm waiver rule *does* apply to bar an appellee from defending a favorable result on the basis of a distinct *alternative rationale* that the district court did not use and that the appellee waived through a failure to object. *See Schrader v. Fred A. Ray, M.D., P.C.*, 296 F.3d 968, 975 (10th Cir. 2002).[8]

Here, the district court dismissed Mr. Escobar's spitting claim for failure to allege a constitutional violation, contrary to the magistrate judge's earlier recommendation.[9] A straightforward affirmance on the basis of that holding would clearly not be barred by the firm waiver rule (though we rejected this course above).

---

7 By the same token, we apply the firm waiver rule even when the district court has elected to review an unobjected-to issue de novo if it ultimately adopts the magistrate judge's recommendation and the non-objecting losing party seeks to challenge that decision on appeal. *See Vega v. Suthers*, 195 F.3d 573, 579-580 (10th Cir. 1999).

8 In *Schrader*, a Rehabilitation Act defendant which had been granted summary judgment on the basis that it lacked the fifteen employees required for application of the Act sought to defend the judgment on the alternative basis that the plaintiff was not an intended beneficiary under the Act—an entirely distinct argument that the district court itself had deemed waived. *See Schrader*, 296 F.3d at 970, 975.

9 The fact that the district court reached this conclusion on a reconsideration of the matter is of no moment. "A court's disposition of a single claim in a suit involving multiple claims is subject to reconsideration until the entry of judgment on all of the claims, absent explicit direction for the entry of judgment on the single claim." *First Am. Kickapoo Operations, L.L.C. v. Multimedia Games, Inc.*, 412 F.3d 1166, 1170 (10th Cir. 2005).

Logically, we also do not believe that the firm waiver rule should bar an affirmance on the integrally related—as opposed to distinct—rationale of qualified immunity. The qualified immunity defense involves a two-step inquiry, the first step of which coincides with the district court's dispositive ruling here—*viz.*, its determination that Mr. Escobar did not adequately plead a constitutional violation. *See Clark*, 625 F.3d at 690. In other words, the first step is encompassed in, and bears a logical connection to, the overarching qualified immunity inquiry. We of course recognize that not infrequently this step need not be reached to determine the applicability of the qualified immunity defense. *See, e.g.*, *Toevs v. Reid*, 685 F.3d 903, 910 (10th Cir. 2012). However, when it is reached, a ruling that no constitutional violation has been demonstrated *necessarily* obviates the need for a finding at the second step that no clearly established (constitutional) violation occurred.

Thus, when the district court ultimately held that Mr. Escobar failed to state an Eighth Amendment violation, it fully abjured, as a matter of law and logic, its prior interlocutory ruling adopting the magistrate judge's recommendation that defendants' qualified immunity defense should be rejected. We therefore consider an affirmance on the basis of qualified immunity to be within the effective scope of the district court's ultimate constitutional rationale of decision, and not a distinct alternative rationale of the sort barred by our firm waiver rule. *See Schrader*, 296 F.3d at 975. We also note that this treatment of the matter is bolstered by its consistency with our cases recognizing the unique nature of qualified immunity,

which serves as an immunity from the burdens of litigation rather than a mere defense to liability, *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1150 (10th Cir. 2006), and as such should remain available to the defendant at multiple stages of the case, *see, e.g.*, *Cassady v. Goering*, 567 F.3d 628, 634 (10th Cir. 2009); *Weise v. Casper*, 507 F.3d 1260, 1265 (10th Cir. 2007).

**2. Denial of access to courts (interference with legal materials)**

Mr. Escobar complains in conclusory terms that defendants destroyed, confiscated, and/or disordered his legal materials so as to interfere with his access to the courts. The district court summarily rejected this claim for various reasons, one of which will suffice for our purposes here. In order to state a claim for denial of access to the courts, a prisoner must demonstrate actual injury from the alleged interference by presenting facts that show how he was impeded in his effort to pursue a particular nonfrivolous legal claim. *See, e.g.*, *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) (applying actual-injury requirement recognized in *Lewis v. Casey*, 518 U.S. 343, 351-55 (1996)); *Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) (same). As the district court noted, the broad allegations that Mr. Escobar added to the final pretrial order in this regard did not include any such facts.

**3. Denial of medical care**

The district court dismissed as conclusory Mr. Escobar's claim that a CSP physician failed to provide him adequate medical attention and that defendants were responsible for the omission(s). The district court noted that Mr. Escobar had not

identified what medical treatment he should have been given but was denied through defendants' actions. On appeal, Mr. Escobar complains (1) that the physician examined him briefly when his face was swollen and his ear was bleeding after the alleged incident of excessive force in May 2007, and returned him to defendants upon finding "there's nothing broken"; (2) that he has nerve damage in his hands for which "Medical has informed him there's nothing that can be done"; and (3) that he "suffers from severe back pain, headaches, loss of memory, emotional instability reactions, food and sleep deprivations." Aplt. Opening Br. at 3-b and 3-c. These allegations would not cure the deficiencies in his claim. The first does not identify any particular omission in treatment; the second merely reflects a medical judgment that on its face does not constitute deliberate indifference (nor does it indicate any role played by defendants in the denial of treatment); and the third is merely a recitation of complaints without any indication that medical attention was sought and denied for them (or that, if it was, defendants had anything to do with the denial).

**4. False disciplinary reports**

Mr. Escobar also claimed that defendants filed false disciplinary reports against him. Again, the allegations added to the final pretrial report in this regard are utterly conclusory. He did not even identify the reports, let alone specify in what respects they were false and how any falsifications were material to their resolution. "Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244

(10th Cir. 2009) (internal quotation marks omitted); *see, e.g.*, *Cardoso v. Calbone*, 490 F.3d 1194, 1199 (10th Cir. 2007) (holding broad allegation of conspiracy to fabricate prison misconduct charge failed to state claim for relief). And, as the district court noted, absent deficiencies in the due process afforded with respect to prison disciplinary charges, "mere allegations of falsified evidence or misconduct reports," without more, do not state a claim. *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002); *see also McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 952-53 (2d Cir. 1986); *Johnson-Bey v. Ray*, 38 F. App'x 507, 510 (10th Cir. 2002); *Northington v. McGoff*, No. 91-1252, 1992 WL 149918, at *4 (10th Cir. June 25, 1992) (unpub.). While Mr. Escobar attributed some other misconduct alleged in his pleadings to retaliatory motives, his allegations in the final pretrial order about false disciplinary reports do not invoke this additional consideration.

## III. CONCLUSION

For the above reasons, we conclude that the district court properly dismissed the claims that are the subject of this appeal. We note that Mr. Escobar's pro se briefing is somewhat digressive and unfocussed. Although we have reviewed all of his arguments, we have endeavored to address explicitly only those points material to our disposition of the issues on appeal.

The judgment of the district court is AFFIRMED. Mr. Escobar's motion for appointment of counsel is DENIED as moot.

Entered for the Court

Jerome A. Holmes
Circuit Judge