**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 22, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

HERMAN T. CLARK,

        Plaintiff-Appellee,

v.

LEON WILSON,

        Defendant-Appellant.

No. 09-6219

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 5:08-CV-00005-C)**

---

Submitted on the briefs:[*]

Herman T. Clark, Pro Se.

Kim M. Rytter, Assistant Attorney General, Oklahoma Attorney General's Office, Litigation Section, Oklahoma City, Oklahoma for Defendant-Appellant.

---

Before **BRISCOE**, Chief Judge, **TYMKOVICH** and **GORSUCH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Herman T. Clark, an Oklahoma state prisoner proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 in response to the freezing of his prison trust account. Clark's only claim on appeal is that a prison official violated his Fourteenth Amendment right to procedural due process by failing to provide notice and a hearing before freezing his account. The district court denied the prison official's motion for summary judgment based on qualified immunity, and this appeal followed. Exercising jurisdiction under 28 U.S.C. § 1291, we REVERSE the denial of qualified immunity because Clark did not have a clearly established right in 2007 to a predeprivation hearing.

## I. Background

In 1975, Clark and an accomplice kidnaped two women, Jana Robinson and Wanda Master. After taking them to a remote location, they killed Master and shot Robinson twice in the face, but she survived. Clark was sentenced to death for Master's murder. His sentence was later modified to life imprisonment, which he is serving in an Oklahoma state prison.

In 2005, Robinson filed a civil suit against Clark in Oklahoma state court, asserting claims for assault, battery, and intentional infliction of emotional distress. Robinson's suit was successful and she received a $2 million judgment against Clark. In June 2007, she filed a garnishment action against Clark's prison trust account. The garnishment summons and related documents were served on

the Oklahoma Department of Corrections (DOC), and eventually they were forwarded to Leon Wilson, a prison official handling prisoner trust accounts. At some point prior to September 6, 2007, Wilson froze Clark's prison trust account in order to comply with the summons and Oklahoma statutes governing civil garnishment actions. Clark was later notified of the freeze.

In response to the freezing of his prison account, Clark filed a civil rights action against Wilson under § 1983, asserting claims of (1) denial of access to the courts, (2) retaliation, and (3) deprivation of procedural due process.[1]

Wilson initially filed a motion to dismiss based on the doctrine of qualified immunity, but a magistrate judge recommended denying it for two reasons. First, because "[t]he Tenth Circuit Court of Appeals has squarely held that inmates enjoy a property interest in funds which remained in their prison trust accounts after all mandatory deductions," Aplt. App. at 58 (citing *Gillihan v. Shillinger*, 872 F.2d 935 (10th Cir. 1989)), the magistrate judge concluded that Clark's "allegations would support entitlement to procedural due process under the Fourteenth Amendment," *id.* at 59. As a result, he had "sufficiently alleged a constitutional violation." *Id.* at 58.

Second, on the question of whether the alleged constitutional violation was "clearly established," the magistrate judge recommended the district court find

---

[1]     Clark asserted additional claims and named other prison officials as defendants, but these claims and parties are not at issue in this appeal.

that *Gillihan* clearly established Clark's entitlement to a predeprivation hearing prior to the freezing of his prison account. *Id.* at 59-60. In March 2009, the district court adopted the magistrate judge's recommendations regarding Clark's procedural due process claim "in [their] entirety." *Id.* at 63.

Wilson subsequently moved for summary judgment on Clark's procedural due process claim based on qualified immunity, arguing in part that he was entitled to summary judgment in light of the Supreme Court's post-*Gillihan* decision in *Sandin v. Conner*, 515 U.S. 472 (1995). The motion was again referred to the magistrate judge, who issued another report and recommendation in July 2009. For reasons that are unclear from the record, the magistrate judge modified Clark's procedural due process claim by stating Clark had asserted "two due process violations from the 'freeze' on his account." Aplt. App. at 137. According to the magistrate judge:

> First, Plaintiff claims that Defendant Wilson had frozen the account without providing copies of the garnishment summons, the DOC's corresponding answer, or an exemption form. Second, Mr. Clark claims that instead of freezing the entire account, Mr. Wilson should have followed DOC policy which limited the garnishment to ten percent of the inmate account.

*Id.* at 137-38 (citations omitted). The magistrate judge recommended that the district court grant summary judgment on the latter claim but deny it on the former claim, reasoning that Wilson "fail[ed] to present any evidence that he had

provided the notice mandated by the [garnishment] summons."[2]  *Id.* at 140.

The district court adopted "in its entirety" the magistrate judge's July 2009 report and recommendation.  *Id.* at 177.  The district court analyzed Clark's procedural due process claim as involving an alleged lack of proper notice of the garnishment proceedings under state law and concluded "[t]he fact that Plaintiff was unable to contest the garnishment proceedings until almost four months after the summons was issued could constitute a due process violation."  Aplt. App. at 176.

## II.  Analysis

As explained below, we conclude that the district court erred in denying Wilson's motion for summary judgment on the basis of qualified immunity in light of the Supreme Court's post-*Gillihan* decision in *Sandin v. Conner*, 515 U.S. 472 (1995).  We therefore reverse the denial of qualified immunity to Wilson.

### A.  Jurisdiction and Standard of Review

"[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment."  *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).  Our jurisdiction is limited to

---

[2]      Clark did not object to the magistrate judge's recommendation that summary judgment be entered in favor of Wilson on the claim regarding the DOC policy, and that claim is therefore not before us on appeal.

"whether or not certain given facts showed a violation of 'clearly established' law." *Johnson v. Jones*, 515 U.S. 304, 311 (1995) (citation omitted). Thus, relying on Clark's version of the pertinent facts, we have jurisdiction to consider whether Wilson is entitled to qualified immunity.

"We review de novo a district court's decision to deny a summary judgment motion that asserts qualified immunity." *Eidson v. Owens*, 515 F.3d 1139, 1145 (10th Cir. 2008). A defendant asserting qualified immunity should be granted summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

## B. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quotation omitted). To resolve qualified immunity claims, a court must consider two elements: whether a constitutional violation occurred, and whether the violated right was "clearly established" at the time of the violation. *Id*. at 815–16. But we have discretion to "decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular

case at hand." *Id.* at 818. Further, in order to reverse a denial of qualified immunity, "we need only find that the plaintiff[] failed either requirement." *Swanson v. Town of Mountain View*, 577 F.3d 1196, 1199 (10th Cir. 2009). Because we conclude that Wilson did not violate a clearly established constitutional right, "we take the advice of *Pearson* and address that issue first." *Id.*

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010) (quotation omitted). The Supreme Court has held "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (quotations and alteration omitted). As this court has pointed out, "[t]he *Hope* decision shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (quotations omitted).

Applying these principles, the determinative legal issue in this appeal is whether Clark had a clearly established right in 2007 to a predeprivation hearing before Wilson froze his prison trust account.

### C. Protected Property Interest

In *Gillihan*, we held that Wyoming statutes create "a legitimate expectation that [prisoner account] money not used for specified reasons [in the Wyoming statutes] will be returned to the inmate at the end of his incarceration and, therefore, create a protected property interest in the funds." 872 F.2d at 939. In doing so, we interpreted existing Supreme Court precedent as focusing the inquiry on whether a state "used language of an unmistakably mandatory character" that "demands a conclusion that the [s]tate has created" a protected property interest. *Hewitt v. Helms*, 459 U.S. 460, 471-72 (1983). As we noted in *Cosco v. Uphoff*,

> the *Hewitt* methodology . . . looks to mandatory language in statutes or regulations to determine whether the right in question rises to a level which can only be withdrawn by observing due process standards. In claims involving property interest, the methodology relies on a showing that the regulatory language is so mandatory that it creates a right to rely on that language thereby creating an entitlement that could not be withdrawn without due process.

195 F.3d 1221, 1223 (10th Cir. 1999).

*Gillihan* was decided in 1989. Six years later, the Supreme Court decided *Sandin*, 515 U.S. 472, which transformed the jurisprudence governing prisoners' procedural due process claims. *Sandin* expressly rejects the *Hewitt* methodology by shifting the focus of the inquiry from the language of the regulation to whether

the punishment "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. Although *Sandin* addresses liberty interests, we interpret it to extend the same analysis to protected property interest inquiries. *See Cosco*, 195 F.3d at 1223.

We have since applied the *Sandin* analysis beyond the context of prison conditions. In *Steffey v. Orman*, for example, we held that a prisoner did not have a protected property interest in a money order sent to him by another prisoner's mother. 461 F.3d 1218, 1221-23 (10th Cir. 2006). We reached this conclusion because "Mr. Steffey . . . presented no evidence or authority for the proposition that [being deprived of a contraband money order] was an 'atypical and significant hardship' that subjected him to conditions much different from those ordinarily experienced by inmates serving their sentences in the customary fashion." *Id.* at 1222.

Because it is based on the "legitimate expectations" methodology expressly abrogated by *Sandin*, *Gillihan*'s holding that prisoners have a protected property interest in the funds in their prison trust accounts is no longer good law and, hence, not "clearly established" in this circuit.[3] As in *Steffey*, we cannot find

_____

[3] Although a three-judge panel of this court generally cannot overrule a prior judgment of another panel of this court, this rule does not apply where, as here, there is an intervening contrary decision by the Supreme Court. *See United States v. Shipp*, 589 F.3d 1084, 1090 n.3 (10th Cir. 2009); *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993).

Clark had a protected property interest in the frozen funds without first applying the *Sandin* test to his claim. But we have never before addressed the question of whether freezing a prison account in response to a garnishment summons imposes an atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life. Neither did any Supreme Court decision on point or clearly established authority from other circuits exist at the time of Wilson's actions.[4]

In sum, because neither the Supreme Court nor any court of appeals had applied *Sandin*'s "atypical and significant hardship" test to the freezing of a prison trust account by 2007, Wilson did not violate a clearly established constitutional right and hence is entitled to qualified immunity.

### III. Conclusion

We **REVERSE** the district court's denial of qualified immunity to Wilson on Clark's procedural due process claim and **REMAND** this matter with directions for the district court to enter judgment in favor of Wilson on Clark's procedural due process claim and dismiss the claim with prejudice. Because the docket sheet for this appeal demonstrates that Wilson filed his brief in chief in a timely manner, we **DENY** Clark's motion to dismiss this appeal.

---

[4] In *Burns v. PA Department of Correction*, 544 F.3d 279, 285–91 (3d Cir. 2008), the Third Circuit held that prison officials deprived a prisoner of a protected property interest for purposes of procedural due process when they assessed the prisoner's inmate account for medical and other expenses, even though no funds had actually been deducted from the account. Because *Burns* was decided after the conduct at issue in this case took place, it is not relevant to the clearly established law inquiry that we must engage in here.