**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 14, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

NIT DASGUPTA,

        Plaintiff-Appellee,

v.

KATHY HARRIS; JAMES BOWEN;
STEVE LOHMANN; PAUL BERAN,
in their individual and official
capacities,

        Defendants-Appellants,

and

BOARD OF REGENTS FOR
OKLAHOMA COLLEGES;
NORTHWESTERN OKLAHOMA
STATE UNIVERSITY; LEROY
BURKS,

        Defendants.

No. 09-6277
(D.C. No. 5:08-CV-00546-R)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **TYMKOVICH**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and **GORSUCH**, Circuit Judge.

---

Kathy Harris, James Bowen, Steve Lohmann, and Paul Beran appeal the district court's denial of their motion for qualified immunity with regard to Nit Dasgupta's 42 U.S.C. § 1981 claims of intentional race discrimination arising out of the nonrenewal of his employment contract. Exercising only limited jurisdiction in this interlocutory appeal, we dismiss the portions of the appeal over which we do not have jurisdiction; affirm the denial of qualified immunity to Dr. Harris, Dr. Bowen, and Dr. Lohmann; and reverse the denial of qualified immunity to Dr. Beran.

## I. Background

Mr. Dasgupta, who is of Asian Indian origin and ethnicity, was an assistant professor of business at Northwestern Oklahoma State University. His immediate supervisor was Dr. Harris, who was the Chair of the Department of Business, E-Commerce, and Agriculture. Dr. Harris reported to the Dean of the School of Professional Studies, Dr. Bowen; Dr. Bowen reported to the Vice President of Academic Affairs, Dr. Lohmann; and Dr. Lohmann reported to the President of the University, Dr. Beran.

Mr. Dasgupta was employed pursuant to a yearly contract for each of the 2003-04, 2004-05, and 2005-06 academic years. Each appellant participated in

hiring him, either recommending the university offer him a contract or approving the recommendation. For the first two contract years, there were no problems. According to appellants, however, in the fall semester of 2005, Mr. Dasgupta began acting erratically. They point to several events they considered unusual, including Mr. Dasgupta sleeping in his office overnight, leaving late-night messages on Dr. Harris's office voice mail, and leaving a letter containing inappropriate comments for Dr. Harris under her office door. They also state that a female student complained of feeling harassed by e-mail and telephone contacts, and that Mr. Dasgupta was instructed not to contact that student and not to contact any student after 9 p.m. Ultimately, Dr. Harris, Dr. Bowen, and Dr. Lohmann recommended that Dr. Beran not renew Mr. Dasgupta's contract for the 2006-07 academic year. Dr. Beran agreed with the recommendation and issued a notice of nonrenewal. Because his contract was not renewed and he was not employed by the university after the end of the spring 2006 semester, Mr. Dasgupta also was denied the opportunity to teach classes during the summer 2006 interim session.

Alleging discrimination on the basis of race and national origin and retaliation, Mr. Dasgupta brought suit under § 1981, 42 U.S.C. §§ 1983 and 1985, Title VII of the Civil Rights Act of 1964, and state law. Appellants moved for summary judgment. Mr. Dasgupta responded in opposition, attaching an affidavit that denied the occurrence of many of the events identified by appellants (such as

sleeping in his office, writing a disturbing letter to Dr. Harris, and harassing a female student) and denied having these issues being brought to his attention by appellants. He stated that Dr. Harris had encouraged him to communicate freely with her by e-mail or voice mail and that he left late-night messages on her voice mail because she had indicated that she needed his feedback urgently.

His affidavit also stated that Dr. Harris had "told [him] that [he] was considered expensive as an Asian Indian by the administration during [his] Spring annual evaluation meetings with her in Spring 2005 and Spring 2006," and that "[s]he commented that she and the administration considered me expensive for my Asian Indian ethnicity [a]nd [another Asian Indian employee] was saving them money." Aplt. App., Vol. IV at 614, 616; *see also id.* at 621. Mr. Dasgupta contended that, at a February 2010 meeting in his office, Dr. Bowen raised the issue of certain additional compensation Mr. Dasgupta had requested:

> Defendant Bowen compared me to the other faculty member who shared my Asian Indian ethnicity . . . [who] worked in the same [Business, E-Commerce, and Agriculture] department as me and was being paid a lesser salary than that required by the official salary schedule. Bowen advised me not to pursue the requested overload payments and cooperate [u]ncomplainingly to accept similar unequal terms of lesser pay for more work obediently without being insubordinate, just like [the other employee] obeyed. I complained to Bowen that this is discrimination against the two minority non white faculty in the department based on racial and ethnic characteristics that this faculty cannot control.

*Id.* at 616. And Mr. Dasgupta alleged that the copy of his evaluation before him on February 17, 2006, was different from the copy he was given on May 31, 2006.

-4-

The district court granted defendants' motion as to the bulk of the claims. But noting Mr. Dasgupta's affidavit, the district court concluded that for his § 1981 claims regarding the nonrenewal of his contract and the denial of the summer teaching opportunity, he had produced sufficient evidence that appellants' nondiscriminatory reason was a pretext for discrimination. As a result, the district court denied qualified immunity on those two claims.[1] Appellants brought this interlocutory appeal challenging this denial of qualified immunity.

## II.  Analysis

### A.  Jurisdiction and Standard of Review

This court has jurisdiction to consider an interlocutory appeal from the district court's denial of qualified immunity only to the extent that the denial rests on issues of law. *See Johnson v. Jones*, 515 U.S. 304, 311 (1995).  "[I]f a defendant's appeal of the denial of qualified immunity is based on the argument that, even under the plaintiff's version of the facts, the defendant did not violate clearly established law, then the district court's ruling is immediately appealable." *Hatheway v. Thies*, 335 F.3d 1199, 1204 (10th Cir. 2003) (quotation and alteration omitted).  But "we are not at liberty to review a district court's factual conclusions, such as the existence of a genuine issue of material fact for a

---

[1]  The district court also denied summary judgment on a state-law claim of tortious interference, but that claim is not at issue in this appeal.

jury to decide, or that a plaintiff's evidence is sufficient to support a particular factual inference." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1276 (10th Cir. 2008) (quotation and emphasis omitted); *see also Johnson*, 515 U.S. at 313.

This court sua sponte ordered the parties to brief the issue of appellate jurisdiction. After the parties responded, the jurisdictional question was referred to this panel. As discussed below, appellants identify questions of law that we have jurisdiction to consider. Accordingly, we decline to dismiss the entire appeal for lack of jurisdiction. But appellants do raise some arguments that appear to attack the factual record; particularly, that the court should disregard Mr. Dasgupta's affidavit. Because we consider this argument to be one concerning evidence sufficiency, we dismiss it for lack of jurisdiction.[2]

Our review of the district court's denial of summary judgment based on qualified immunity is de novo. *See Clark v. Wilson,* 625 F.3d 686, 690 (10th Cir. 2010). In analyzing appellants' arguments, we view the evidence in the light most favorable to Mr. Dasgupta. *See Deutsch v. Jordan*, 618 F.3d 1093, 1099 (10th Cir. 2010).

---

[2]     Appellants invoke an exception noted by *Lewis v. Tripp*, 604 F.3d 1221 (10th Cir. 2010), and argue that the court can disregard Mr. Dasgupta's affidavit because it "is blatantly contradicted by the record." Aplt. Br. at 27. But as support for the "blatant contradiction" exception, *Lewis* cited *Scott v. Harris*, 550 U.S. 372, 380 (2007). *See Lewis*, 604 F.3d at 1226. In *Scott*, a videotape of the relevant events contradicted the plaintiff's account, and thus his "version of events is so utterly discredited by the record that no reasonable jury could have believed him." 550 U.S. at 380. These circumstances are not sufficiently close to *Scott* to support applying the "blatant contradiction" exception.

**B. Qualified Immunity**

To overcome appellants' assertion of qualified immunity, Mr. Dasgupta must show (1) appellants violated his rights under § 1981, and (2) those rights were clearly established at the time appellants acted. *See Clark*, 625 F.3d at 690; *see also Deutsch*, 618 F.3d at 1099. Appellants argue that Mr. Dasgupta has not established either factor. With regard to the violation factor, they assert that he has not shown the required element of purposeful discrimination by each and every appellant. In connection with this argument, they raise three legal questions that we have jurisdiction to consider: that (1) the relevant issue is their honest beliefs at the time, not the actuality of what occurred; (2) they are entitled to the benefit of the "same actor" inference; and (3) the district court did not make any findings regarding each appellant's intentional discrimination. With regard to the "clearly established" factor, appellants present the immediately appealable legal issue of whether the law was clearly established.

**1. Intentional Discrimination**

"Section 1981 prohibits racial discrimination in 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1532 (10th Cir. 1995) (quoting 42 U.S.C. §§ 1981(a), (b)). "To make out a claim under § 1981, [plaintiff] must show that Defendants intentionally or purposefully discriminated against [him]." *Id.*

-7-

Appellants first argue that what is relevant is not what actually happened, but what they honestly believed to have happened at the time they acted. *See, e.g., Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) ("[T]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." (quotation omitted)). Thus, they contend, even if Mr. Dasgupta did not sleep in his office, did not write the letter that bothered Dr. Harris, and did not harass a female student, they are still entitled to qualified immunity, because they honestly believed that he did those things.

It appears, however, that this argument was not raised before the district court. Appellants do not identify where they raised it, *see* 10th Cir. R. 28.2(C)(2) ("For each issue raised on appeal, all briefs must cite the precise reference in the record where the issue was raised and ruled on."), and we do not see where it was raised. Accordingly, we will not consider the argument. *See Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc.*, 413 F.3d 1163, 1167 (10th Cir. 2005) (holding that arguments not raised in the district court are waived on appeal).

Appellants also argue that because they recommended and approved hiring Mr. Dasgupta, they are entitled to the benefit of the "same actor" inference. See *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006) ("[I]n cases where the employee was hired and fired by the same person within a relatively short time span, there is a strong inference that the employer's stated

-8-

reason for acting against the employee is not pretextual." (quotations and footnote omitted)). This inference, however, is of limited utility in situations such as this, where Mr. Dasgupta avers that appellants discriminated against him because he did not conform to a preconceived notion that Asian Indians could be paid less for doing the same or more work. As the Seventh Circuit has stated, "[t]he psychological assumption underlying the same-actor inference may not hold true" where the hiring person acts with beliefs or stereotypes about how the employee should behave, but the employee does not conform to those expectations. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 745 (7th Cir. 1999). There, the court concluded:

> [The plaintiff] is able to rebut whatever inference arises from the fact that the same person both hired and fired him. [He] produces sufficient evidence of racial bias during his employment to suggest that when [the owner] hired him, he expected [the plaintiff] to comply with the race-based limitations of the job. The evidence suggests that when [the plaintiff] failed to comply with these limitations, he was fired.

*Id.*; *see also Antonio*, 458 F.3d at 1183 (stating that despite the "same actor" inference, "[t]he plaintiff still has the opportunity to present countervailing evidence of pretext"). As in *Johnson*, under these circumstances Mr. Dasgupta has rebutted whatever inference arises from the fact that appellants originally recommended and approved hiring him.

Finally, appellants argue that the district court failed to make findings that each of them intentionally discriminated against Mr. Dasgupta. This argument

invokes an exception discussed in *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010), in which this court stated:

> when the district court at summary judgment fails to identify the particular charged conduct that it deemed adequately supported by the record, we may look behind the order denying summary judgment and review the entire record *de novo* to determine for ourselves as a matter of law which factual inferences a reasonable jury could and could not make.

The district court did identify specific facts concerning Dr. Harris's and Dr. Bowen's participation in the events underlying the nonrenewal. Thus, as to these appellants, the argument becomes one of evidence sufficiency rather than a lack of findings. Under these circumstances, the exception is not satisfied and we will not review the record de novo to determine for ourselves the possible factual inferences. These appellants' arguments are dismissed for lack of jurisdiction.

The situation is not so clear for Dr. Lohmann. The district court did identify some facts alluding to his participation in the events underlying the nonrenewal, but these facts do not so clearly implicate racial discrimination. Given this uncertainty, we have engaged in a de novo review of the record regarding Dr. Lohmann's conduct, and conclude that there is sufficient evidence to support the district court's decision to deny qualified immunity. Dr. Lohmann, jointly with Dr. Harris and Dr. Bowen, recommended nonrenewal, and he transmitted that recommendation to Dr. Beran. And Dr. Lohmann's testimony is essential to establish one of the events allegedly underlying the nonrenewal

decision (that he found Mr. Dasgupta sleeping in his office and told him that he could not live there). Mr. Dasgupta contradicted Dr. Lohmann's testimony. A jury could disbelieve Dr. Lohmann, and "evidence establishing the prima facie case, along with the reasonable inferences drawn therefrom, coupled with a disbelief of the employer's explanation, can be sufficient to make" a finding of discrimination. *Miller v. Eby Realty Group, LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005). The denial of qualified immunity to Dr. Lohmann is affirmed.

As for Dr. Beran, the district court identified only that he approved the other appellants' recommendation not to renew Mr. Dasgupta's contract. This act alone does not lead to an inference of intentional racial discrimination. And our de novo review of the record does not reveal any other evidence that could lead a reasonable jury to infer intentional racial discrimination by Dr. Beran. Accordingly, we hold that the district court erred in denying Dr. Beran's motion for summary judgment. *See Lewis*, 604 F.3d at 1228-30; *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1153-54 (10th Cir. 2006). The denial of summary judgment to Dr. Beran is reversed, and the matter is remanded with instructions to grant summary judgment in favor of Dr. Beran on the § 1981 claims.

### 2. Clearly Established Law

The district court simply stated, without citation, that Mr. Dasgupta's § 1981 "rights were clearly established in February 2006." Aplt. App., Vol. IV at 799. On appeal, appellants complain that "[t]he district court overlooked any

analysis of whether the law was sufficiently clear under the fact scenario faced by the individually-named Defendants." Aplt. Br. at 24. While they concede "that the law is clearly established, in the broadest sense, that the individually-named Defendants may not take an adverse employment action against Plaintiff based upon his race/national origin," they argue that "this broad generalized statement of the law does not give any kind of guidance as to when government actors are entitled to qualified immunity or not." *Id.* at 25.

Appellants mistakenly rely on their version of the facts, rather than the facts in the light most favorable to Mr. Dasgupta. Particularly, they contend that their honestly-held beliefs about his allegedly bizarre behavior should form part of the "clearly established" calculus. But as discussed above, they did not raise the honest-belief argument in the district court. And viewing the facts in the light most favorable to Mr. Dasgupta, as we must, the evidence is that the majority of these incidents never occurred.

In evaluating a constitutional issue, this court recently explained when a principle is "clearly established" for purposes of qualified immunity:

> The Supreme Court has held "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (quotations and alteration omitted). As this court has pointed out, "[t]he *Hope* decision shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was

unconstitutional." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (quotations omitted).

*Clark*, 625 F.3d at 690. The same analysis applies here, where the alleged violation involves a statutory right. This court decided well before 2006 that employment discrimination on the basis of race violates § 1981. *See Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1244 (10th Cir. 2000) (holding law to be clearly established in 1996). We need not search for a case with precisely similar facts, because we are convinced that by 2006, public officials had adequate notice that deciding not to renew an employee's teaching contract because of his race would be in violation of his statutory rights.

Thus, we agree with the district court that the law was clearly established at the time of the events at issue in this case.

### III. Conclusion

We DISMISS for lack of jurisdiction the portions of the appeal in which appellants challenge the sufficiency of Mr. Dasgupta's affidavit and the sufficiency of the evidence as to discrimination by Dr. Harris and Dr. Bowen. We AFFIRM the district court's denial of qualified immunity to Dr. Harris, Dr. Bowen, and Dr. Lohmann on Mr. Dasgupta's § 1981 claims regarding the nonrenewal of his contract and the denial of the opportunity to teach during the

summer session. We REVERSE the district court's denial of qualified immunity to Dr. Beran on these claims. We REMAND with instructions to grant summary judgment to Dr. Beran on the § 1981 claims and for further proceedings consistent with this opinion.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge