FILED
United States Court of Appeals
Tenth Circuit

April 1, 2014

Elisabeth A. Shumaker
Clerk of Court

# UNITED STATES COURT OF APPEALS

# FOR THE TENTH CIRCUIT

HERMAN TRACY CLARK,

Plaintiff - Appellant,

v.

MICHAEL OAKLEY; OKLAHOMA
DEPARTMENT OF CORRECTIONS,

Defendants - Appellees.

No. 13-6205
(D.C. No. 5:11-CV-00946-C)
(W.D. Okla.)

## ORDER AND JUDGMENT[*]

Before **GORSUCH**, **McKAY**, and **ANDERSON**, Circuit Judges.

Mr. Clark is a state prisoner proceeding pro se. In a previous case, he brought

civil rights claims against Leon Wilson, an official who froze his prison trust account

in response to a garnishment summons. Although the district court denied

Mr. Wilson qualified immunity, we reversed. *Clark v. Wilson*, 625 F.3d 686, 692

(10th Cir. 2010) (*Clark I*). We held that Mr. Wilson was entitled to qualified

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

immunity because at the time Mr. Wilson acted, Mr. Clark did not have a clearly established procedural due process right to a hearing before his prison account was frozen. *Id.* at 691-92.

After his loss in *Clark I*, Mr. Clark sued the Oklahoma Department of Corrections (ODOC) and its General Counsel Michael Oakley. These defendants, he contended, had deprived him of his right of access to the courts by providing a deficient law library. Mr. Clark argued that if the law library at the prison had been constitutionally adequate, he could have found case law to persuade this court in *Clark I* to affirm the denial of qualified immunity to Mr. Wilson rather than reversing it.

The district court dismissed the complaint against Mr. Oakley and ODOC, reasoning that Mr. Clark could not have won *Clark I* even with a better-provisioned library. We agree, and therefore affirm the dismissal.

**BACKGROUND**

The parties are familiar with the facts underlying *Clark I*, so we will not belabor them here. In his amended complaint in this case, Mr. Clark alleged that Mr. Oakley made a deliberate decision not to include federal case law from circuits other than the Tenth Circuit as part of the prison's Legal Resource Center. This resulted in "a law library that was sub par." R. at 18. Lack of access to case law from other circuits allegedly caused Mr. Clark actual injury, because it prevented him from citing cases from those other circuits to bolster his arguments in *Clark I*.

Mr. Clark asserts that case law from those circuits would have shown that actions by Mr. Wilson, the defendant in the previous case, violated clearly established law.

To avoid losing in *Clark I*, Mr. Clark needed to show that at the time Mr. Wilson froze his prison account, it was clearly established that inmates had a protected property interest in funds that remained in their accounts after all mandatory deductions, that could give rise to a procedural due process right to a hearing before Mr. Wilson froze his account. If not, Mr. Wilson would be entitled to qualified immunity for his actions. *See Clark I*, 625 F.3d at 690 ("The determinative legal issue in this appeal is whether Clark had a clearly established right in 2007 to a predeprivation hearing before Wilson froze his prison trust account.").

How could Mr. Clark make this necessary showing? As we explained in *Clark I*, "[o]rdinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* (internal quotation marks omitted). In *Clark I*, the district court ruled in favor of Mr. Clark, denying qualified immunity to Mr. Wilson, because it believed it had found just such a Tenth Circuit decision on point: *Gillihan v. Shillinger*, 872 F.2d 935 (10th Cir. 1989). *See Clark I*, 625 F.3d at 688-89.

In *Gillihan*, we held that, given the mandatory language in Wyoming's statutory scheme governing prison accounts, the inmate had a protected property interest in the funds in his account. *Gillihan*, 872 F.2d at 939. Between the time

*Gillihan* was decided and the time Mr. Wilson froze Mr. Clark's account, however, the Supreme Court decided *Sandin v. Conner*, 515 U.S. 472 (1995). In *Sandin*, the Court "shift[ed] the focus of the inquiry [applicable to prisoner due process claims] from the language of the regulation to whether the punishment 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Clark I*, 625 F.3d at 691 (quoting *Sandin*, 515 U.S. at 484). Given this change, and our prior application of *Sandin* to property-based claims, we concluded in *Clark I* that "*Gillihan*'s holding that prisoners have a protected property interest in the funds in their prison trusts account is no longer good law and, hence, not 'clearly established' in this circuit." *Id.*

Most significantly, we further concluded in *Clark I* that, in light of *Sandin*, at the time Mr. Wilson acted, there was also no clearly established law from the Supreme Court, this court, or other circuits that would have informed Mr. Wilson of the wrongfulness of his actions:

> [W]e cannot find Clark had a protected property interest in the frozen funds without first applying the *Sandin* test to his claim. But we have never before addressed the question of whether freezing a prison account in response to a garnishment summons imposes an atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life. *Neither did any Supreme Court decision on point or clearly established authority from other circuits exist at the time of Wilson's actions.*

*Clark I*, 625 F.3d at 691 (emphasis added).

- 4 -

In light of this lack of clearly established law, we reversed the district court's denial of qualified immunity. *Id.* at 691-92. Mr. Clark now claims this loss on appeal in *Clark I* as the "actual injury" that supports his denial-of-access claim.

## ANALYSIS

### 1. Access-to-Courts Claim

"It is now established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To demonstrate standing to proceed in federal court, an inmate who asserts a deprivation of his right of access to the courts must show the alleged deprivation resulted in an actual injury to his ability to pursue litigation. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library . . . is subpar in some theoretical sense." *Id.* at 351. Rather, "the inmate must . . . go one step further and demonstrate that the alleged shortcomings in the library . . . hindered his efforts to pursue a legal claim." *Id.*

Mr. Clark lost in *Clark I* because we decided against him on the merits of the qualified immunity issue. Mr. Clark argues that even though he lost *Clark I* on the merits, he can still show actual injury because his underlying claim was nonfrivolous. *See Lewis*, 518 U.S. at 353 & n.3 (limiting definition of actual injury to "nonfrivolous" claims).

We discussed the necessary showing on the merits in *Simkins v. Bruce*, 406 F.3d 1239 (10th Cir. 2005). There, we held that an inmate need not "prove a

- 5 -

case within a case to show that the claim hindered or impeded by the defendant necessarily would have prevailed." *Id.* at 1244. But we also recognized that the alleged hindrance must bear a causal connection to the alleged injury. We explained:

> Where, for example, the underlying case was adversely decided on the basis of a deficiency logically and practically unrelated to the impediment created by the right-of-access defendants, courts have held that the plaintiff has suffered no actual injury associated with their constitutional misconduct. *See, e.g., Deleon v. Doe*, 361 F.3d 93, 94 (2d Cir. 2004) (holding plaintiff had not shown actual injury resulting from delay caused by interference with mail where prior case was not dismissed for his untimely submission of materials but on the merits after consideration of those materials).

*Id.*

Although the lack of a causal connection between the alleged hindrance and the alleged injury is not as clear here as it was in *Deleon*, the critical causal element is nevertheless absent here. This prevents Mr. Clark from demonstrating the necessary logical and practical relationship between the alleged hindrance and his injury. Simply put, Mr. Clark has failed to show that he lost in *Clark I* because of his inability to present authority from other circuits. He fails to show that access to law from other circuits would have made any difference.

The *Clark I* panel specifically determined that a post-*Sandin* right to procedural due process in connection with the freezing of inmate accounts was *not established in other circuits* at the time Mr. Wilson froze the account. *Clark I*, 625 F.3d at 691. Thus, the *Clark I* panel already examined the state of the law in other circuits and decided against Mr. Clark the very legal argument he alleges he

would have made had defendants provided him with a better library. We need not decide to what extent Mr. Clark is permitted to collaterally attack the prior panel's finding. The fact is, the authorities he has presented entirely fail to demonstrate any error in the prior panel's decision.

Mr. Clark's complaint alleges that "[t]he Third and Eighth Circuits have made post-Sandin decisions to inmate's property interest before 2007, making clearly established law . . . [that] inmates have a property interest in funds held in prison accounts." (brackets and internal quotation marks omitted). R. at 22, ¶ 37 (citing *Higgins v. Beyer*, 293 F.3d 683, 693 (3d Cir. 2002); *Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir. 1997); *Mahers v. Halford*, 76 F.3d 951, 954 (8th Cir. 1996)).[1] Even assuming that authorities from two other circuits could have clearly established the unlawfulness of Mr. Wilson's conduct, the district court concluded that they did not call into question the *Clark I* panel's *Sandin*-based holding, because "[a]lthough these cases were decided after *Sandin*, none of them applied *Sandin*'s test to the freezing of a prison trust account." *See* R. at 53-54. We agree.[2] Therefore,

---

[1]    It may be that inmates do have a property interest in their prison accounts, but strictly speaking that is an issue that is not before us in this appeal. In *Clark I*, we acknowledged that at least one post-2007 case recognized an inmate's protected property interest in his prison account. *Clark I*, 625 F.3d at 691 n.4 (citing *Burns v. PA Dep't of Corr.*, 544 F.3d 279, 285-91 (3d Cir. 2008)). But because that case came after the relevant conduct in *Clark I*, it was not relevant to the clearly established law inquiry.

[2]    Mr. Clark argues that the district court "missed [his] point," Aplt. Br. at 13, because what he was really trying to say is that with an adequate law library, he could have located and cited the Second Circuit case of *Tellier v. Fields*, 280 F.3d 69

(continued)

- 7 -

Mr. Clark's complaint fails to allege the necessary causal connection between the defendants' conduct and his actual injury, and the district court properly dismissed it.

## 2. Other Appellate Issues

In light of the above, Mr. Clark's other appellate issues fail as well. He argues that the district court applied an improper standard in dismissing his complaint for failure to state a claim, but for the reasons we have stated, it is clear that his complaint was properly dismissed under the appropriate standards. He argues that the district court improperly accepted facts contained in a *Martinez* report over conflicting evidence he proffered, but he fails to point to any contested facts that undermine the district court's basis for dismissing his complaint. He contends that the Eleventh Amendment does not bar claims for prospective relief against state employees sued in their official capacities, but he fails to show that he had any valid claims for prospective relief to assert against those employees. He argues that he has

<hr>

(2d Cir. 2000). According to Mr. Clark, *Tellier* would have permitted him to argue "that if statutes and prison regulations place *any* limits on official discretion in placing prisoners in those condition [sic], there is a state-created liberty interest, even if those statutes and regulations would not have created a liberty interest under the pre-*Sandin* analysis." Aplt. Br. at 13. He also argues that *Tellier* would have permitted him to argue that *Gillihan* and authority from other circuits "foreshadowed" the existence of a post-*Sandin* property right. *See* Reply Br. at 2. These arguments differ considerably from the argument Mr. Clark made to the district court. We generally do not address arguments raised for the first time on appeal. *See, e.g.*, *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1169 (10th Cir. 2011) ("This court will not consider arguments presented for the first time on appeal absent extraordinary circumstances."). Moreover, Mr. Clark fails to show that even with *Tellier* in hand, he would have had any effective challenge to the *Clark I* panel's ruling on the "clearly established law" issue under *Sandin*.

shown that Mr. Oakley personally participated in the violations of his constitutional rights, but he fails to demonstrate any constitutional violations in which Mr. Oakley participated. He contends that he should have been granted leave to amend his complaint to add an additional defendant, but for the reasons we have cited, he fails to show that he had a valid access-to-courts claim against that prospective defendant. Finally, he fails to show that the district court abused its discretion in denying his motion for appointment of counsel.

## CONCLUSION

The judgment of the district court is therefore affirmed. Mr. Clark's motion to proceed in forma pauperis is granted. We remind him that he remains obligated to continue making partial payments toward the filing fee until it is paid in full.

Entered for the Court

Monroe G. McKay
Circuit Judge