Virginia **PINDER**, individually and as representative for decedent Robert Pinder, JJNP Ranches, a partnership, Plaintiffs-Appellants,

v.

Travis **MITCHELL**, Sheriff of Duchesne County, Defendant-Appellee.

No. 15-4023

United States Court of Appeals, Tenth Circuit.

November 29, 2016

James D. Garrett, Garrett & Garrett, Trent J. Waddoups, Carr & Waddoups, Salt Lake City, for Plaintiffs-Appellants.

Britton R. Butterfield, Jesse Carl Trentadue, Suitter Axland, PLLC, Salt Lake City, UT, for Defendant-Appellee.

Before KELLY, GORSUCH, and HOLMES, Circuit Judges.**

## ORDER AND JUDGMENT **

Paul J. Kelly, Jr., Circuit Judge

Plaintiffs-Appellants Virginia Pinder, as representative for decedent Robert Pinder and for herself, and JJNP Ranches (collectively "the Pinders") appeal from the district court's dismissal of their 42 U.S.C. § 1983 claim against Travis Mitchell, the sheriff of Duchesne County, Utah. The Pinders sought the return of guns that were seized in 1998 as part of a murder investigation. The district court dismissed their claim for lack of subject-matter jurisdiction and for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Pinder v. Mitchell, No. 2:11CV508DAK, 2015 WL 461352, at *2–3 (D. Utah Feb. 3, 2015). Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

### Background

In 1998, the Pinders' son John was investigated for and subsequently convicted of murder. As part of that investigation, state authorities seized firearms, gun cases, and ammunition from the Pinders' property. The Pinders now seek the return of their guns and compensation for being deprived of their personal property these last eighteen years.

In July 2005, shortly after their son's direct appeal was denied by the Utah Supreme Court, the Pinders wrote to the Utah Attorney General, the Duchesne County Attorney, and the Duchesne County Sheriff seeking return of the weapons. 3 Aplt. App. 253–54. The Pinders were told the guns could not be returned since they still might be needed in case a retrial was ordered as part of any collateral attack on John's conviction. Id. at 256.

Four years later, in September 2009, the Pinders filed a claim in state court against Travis Mitchell, the sheriff of Duchesne County. Id. at 258–61. In his motion to dismiss, Sheriff Mitchell argued that (1) the guns did not belong to the Pinders, but to their son John, and they therefore would revert to the state; (2) the guns might still be needed as evidence in case of a retrial, making the claim premature; (3) the statute of limitations had run, making the claim too late; and (4) the Pinders never sent a notice of claim to the county, as required by the state's Governmental Immunity Act. Id. at 262–71. The state district court dismissed the case without prejudice for the Pinders' failure to send a notice of claim. 1 Aplt. App. 59–60.

In June 2011, the Pinders brought this § 1983 claim in federal district court. Id. at 10–14. Once again, Sheriff Mitchell argued that the statute of limitations had run, that the guns might still be needed as evidence, that the guns did not belong to the Pin-

---

** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

ders, and also that the Pinders needed to seek return of the weapons from the prosecuting attorney, not the sheriff. Id. at 17–18; 2 Aplt. App. 92–96. The district court initially denied Sheriff Mitchell's motion to dismiss and ordered a status report to detail which of the sought-after guns belonged to whom and which ones would actually be needed as evidence. 2 Aplt. App. 105–07.

In June 2014, Sheriff Mitchell renewed his motion to dismiss, this time arguing (1) that the court lacked jurisdiction because the Pinders had not adequately exhausted their state-level post-deprivation remedies; (2) that the Pinders failed to state a claim for the same reason; (3) that Sheriff Mitchell is in any event entitled to qualified immunity; and (4) that the Pinders failed to join an indispensable party by not bringing suit against the state of Utah. 3 Aplt. App. 196–218. The district court granted the motion, finding the Pinders had not pursued to finality their state-court remedies and that as a result the case was not ripe. Pinder, 2015 WL 461352, at *2. The court also held that even if it did have jurisdiction the Pinders failed to state a claim and Sheriff Mitchell was entitled to qualified immunity. Id. at *3.

## Discussion

"We review de novo the district court's dismissal of an action for lack of subject-matter jurisdiction or for failure to state a claim upon which relief can be granted." Trackwell v. U.S. Gov't, 472 F.3d 1242, 1243 (10th Cir. 2007). Ripeness is a "jurisdictional prerequisite," Friends of Marolt Park v. U.S. Dep't of Transp., 382 F.3d 1088, 1093 (10th Cir. 2004) (internal quotation marks and citation omitted), and "[w]hether a claim is ripe for judicial review is a question of law which we review

de novo," Harvey E. Yates Co. v. Powell, 98 F.3d 1222, 1237 (10th Cir. 1996).

In a civil rights claim against a state official brought under 42 U.S.C. § 1983, the general rule is that a plaintiff need not exhaust potential state-level remedies before seeking federal relief. See Zinermon v. Burch, 494 U.S. 113, 124–25, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). This is because "the constitutional violation actionable under § 1983 is complete when the wrongful action is taken." Id. at 125, 110 S.Ct. 975. This rule applies to two of the three kinds of § 1983 claims that can be brought under the Due Process Clause of the Fourteenth Amendment: (1) deprivations of rights guaranteed by the Bill of Rights and incorporated by the Due Process Clause, and (2) substantive due process rights. Id.

But the general rule does not always apply to the third kind of due process claim: when a plaintiff complains that his procedural due process rights were violated. This is because the Constitution does not outright prohibit states from ever taking a citizen's life, liberty, or property, but only from doing so "without due process of law." U.S. Const. amend. XIV, § 1. "Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." Zinermon, 494 U.S. at 126, 110 S.Ct. 975. Only if the State provided no remedies, or the remedies were inadequate, could a plaintiff claim a taking of property occurred without due process of law. See Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (intentional deprivation of property); Parratt v. Taylor, 451 U.S. 527, 542–44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (negligent deprivation of property), overruled in part on other grounds by Daniels v.

Williams, 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

The Pinders argue that "[t]his case involves a classic, physical taking." Aplt. Br. at 10. Yet they contend that an examination of any post-deprivation procedures provided by the state of Utah is unnecessary because "[p]rocedures that are merely remedial are not relevant to ripeness under § 1983." Id. at 16. That is, they contend their constitutional injury is separate and distinct from any available state proceedings: "Plaintiffs were *injured* by the Defendant's constitutional violations. But Plaintiffs only *failed to obtain remedial relief* because of the state court's dismissal." Id.; see also id. at 12–13.

As support for this argument, the Pinders invoke the Supreme Court's discussion in a regulatory takings case, Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). There, the plaintiff challenged a city zoning ordinance as prohibiting any economic use of its property. Id. at 182–83, 105 S.Ct. 3108. In deciding that the challenge was not ripe for review, the Court discussed the difference between exhausting a claim of a constitutional violation in state proceedings, which is not required, and the need for a final agency decision, which is required. Id. at 186–94, 105 S.Ct. 3108. The Court explained that any state procedures in the former scenario would simply be remedial because the violation complained of had already occurred. Id. at 193–94, 105 S.Ct. 3108. In such an instance, there is no need to pursue a state remedy before bringing a § 1983 claim. Id. But in the second scenario, because the alleged constitutional violation depends on what the agency action actually is, a final agency decision is required for one to challenge it. Id. Using this framework, the Pinders contend that the district court erred by categorizing

their claim as falling within the second scenario rather than the first. Aplt. Br. at 15–16.

But the Court's analysis in Williamson County did not end there. The Court explained how allegations of a taking violation are similar to those challenging agency action in that both require use of the state procedures for a claim to be ripe. 473 U.S. at 194–95, 105 S.Ct. 3108. That is, if a plaintiff is claiming a taking violation, the violation has not actually occurred until the state has denied due process. It is that denial that forms the prerequisite for a § 1983 challenge, and that necessarily requires the plaintiff to explore what state-level process is available. Id.

The Pinders also claim that the Parratt exception to the norm of requiring a pre-deprivation hearing is not applicable. Aplt. Reply Br. at 18–19 (citing 451 U.S. at 542–43, 101 S.Ct. 1908). The Pinders distinguish Parratt as involving unauthorized and seemingly-random acts of state employees. According to the Pinders, their case involves constitutional violations that were foreseeable and constituted official state procedure. Thus, they contend, even if Utah provided a post-deprivation hearing, they need not pursue it before coming to federal court because such a remedy is necessarily inadequate. Aplt. Reply Br. at 20.

▆ Yet post-deprivation remedies are not per se inadequate simply because Parratt's rogue actor is not present. Rather, they can be constitutional in many other situations where "[i]t is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place." Parratt, 451 U.S. at 541, 101 S.Ct. 1908. For this reason, and as applies here, there need not be an opportunity for a pre-deprivation hearing before a state can take property pursuant to a search warrant. Fuentes v. Shevin, 407 U.S. 67, 93 n.30, 92

S.Ct. 1983, 32 L.Ed.2d 556 (1972); see also City of W. Covina v. Perkins, 525 U.S. 234, 240–41, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999) (nor does due process require the state to give individualized notice of state-law remedies for the reclamation of property seized pursuant to a warrant). Thus, we find the Pinders' argument that they need not take advantage of any state-level processes before challenging their inadequacy unavailing.

Having determined that the procedures offered by the state of Utah are indeed relevant, we turn now to examining what those procedures were and whether the Pinders availed themselves of them. At the time the Pinders pursued their state-court remedies in 2009, the Utah Code of Criminal Procedure governed property which came "into the possession of a peace officer through execution of a search warrant," Utah Code Ann. § 77–24–1(2)(a) (repealed 2013), or which was "received or taken as evidence in connection with any public offense," id. § 77–24–1(2)(d) (repealed 2013). It then provided, in relevant part:

(1) Property which is not needed as evidence shall be returned to the owner, if the owner may lawfully possess it, or disposed of in accordance with this chapter.

(2)(a) When the peace officer or the officer's employing agency becomes aware that the property is not needed as evidence, the officer or the agency shall inform the prosecuting attorney that the property is not needed and provide a description and details of ownership.

(b) When the prosecuting attorney is informed or otherwise becomes aware that the property is not needed as evidence, the prosecuting attorney shall authorize release of the property to the owner.

(c) When the peace officer or the officer's employing agency becomes aware that any property is to be returned to its owner, the officer or employing agency shall exercise due diligence in attempting to notify the rightful owner that the property is to be returned.

(d) If the property is a weapon, the peace officer shall dispose of it in accordance with Section 76-10-525....[1]

(3)(a) When property is received in evidence, the clerk of the court last receiving it shall retain the property or the clerk shall return the property to the custody of the peace officer. The property shall be retained by the clerk or the officer until all direct appeals and retrials are final, at which time the property shall be returned to the owner in accordance with this chapter....

(b) If the prosecuting attorney considers it necessary to retain control over the evidence, in anticipation of possible collateral attacks upon the judgment or for use in a potential prosecution, the prosecuting attorney may decline to authorize return of the property to the owner.

Id. § 77-24-2 (repealed 2013).

In addition, the Code included a way to petition for the return of seized property:

(4) A person claiming ownership of property seized as evidence in a criminal

---

**1.** Section 76-10-525 provided: "All police departments and/or sheriff's departments which have in their possession a weapon after it has been used for court purposes shall determine the true owner of the weapon and return it to him; however, if unable to determine the true owner of the weapon, or if the true owner is the person committing the crime for which the weapon was used as evidence, the department shall confiscate it and it shall revert to that agency for their use and/or disposal as the head of the department determines."

matter may petition the court for its return. After sufficient notice is given to the prosecutor, the court may order that the property be:

(a) returned to the rightful owner as determined by the court;

(b) applied toward restitution, fines, or fees in an amount set by the court;

(c) converted to public interest use; or

(d) destroyed.

Id. § 77-24-4 (repealed 2013). Though the Utah legislature replaced these Code provisions in 2013, the new standards governing property taken for evidentiary purposes remain similar. See Utah Code Ann. §§ 24–3–102—24–3–104.[2]

Finally, the Governmental Immunity Act of Utah waives the state's sovereign immunity in, among other areas, "any action brought to recover, obtain possession of, or quiet title to real or personal property." Utah Code Ann. § 63G-7-301(2)(a). However, it also requires that any person bringing such a claim "file a written notice of claim with the entity before maintaining an action." Id. § 63G-7-401(2).

■ From this overview, it is clear that Utah had processes available to the Pinders in their quest to have their guns returned. Yet after the state district court dismissed their claim without prejudice for failure to provide a written notice of claim, the Pinders chose not to continue pursuing state-level adjudication. Since the state "may erect reasonable procedural requirements for triggering the right to an adjudication," Logan v. Zimmerman Brush Co., 455 U.S. at 437, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), and since the state "certainly accords *due* process when it terminates a claim for failure to comply with a reasonable procedural or evidentiary rule," id. (citation omitted), this dismissal by the state court cannot constitute the underlying due process violation for the Pinders' § 1983 claim.

Finally, the Pinders also argue that there simply is no state procedure available to them to seek compensation for being deprived of their property these past eighteen years. Aplt. Br. at 14–15. That is, even if the above statutes provide a process for the return of the guns, they do not allow for the just compensation required by the Constitution. Id. But as the Pinders themselves admit, the Utah constitution seems to provide exactly this. Id. at 16–17 (citing Utah Const. art. 1, § 22 ("Private property shall not be taken or damaged for public use without just compensation.")); see also Heughs Land, L.L.C. v. Holladay City, 2005 UT App 202, ¶¶ 7–8, 113 P.3d 1024 (finding Just Compensation Clause "self-executing," such that a claim is not bound by the notice-of-claim requirement of the Governmental Immunity Act).[3]

Because we find the Pinders did not fully pursue available state-court remedies, we agree with the district court that their

---

**2.** Utah Code Ann. § 24–3–104(1) currently governs the petition process for the return of property held as evidence:

(a) A person claiming ownership of property held as evidence may file a petition with the court for the return of the property.

(b) The petition may be filed in:

(i) the court in which criminal proceedings have commenced regarding the conduct for which the property is held as evidence; or

(ii) the district court of the jurisdiction where the property was seized, if there are no pending criminal proceedings.

(c) A copy of the petition shall be served on the prosecuting attorney and the agency which has possession of the property.

**3.** Indeed, since bringing this § 1983 claim, the Pinders have pursued a state constitutional claim in Utah state court. Aplee. Supp. App. 1–22.

§ 1983 claim is not ripe for review and affirm its dismissal for lack of subject matter jurisdiction.[4]

AFFIRMED.

HOLMES, Circuit Judge, concurring.

I concur in the judgment. I write separately because I respectfully disagree with the majority—and with the district court—that the Pinders' claim can be resolved on jurisdictional grounds (i.e., ripeness). I would instead conclude that the Pinders failed to state a claim for relief pursuant to 42 U.S.C. § 1983, and that the district court properly dismissed their action on this alternative basis pursuant to Federal Rule of Civil Procedure 12(b)(6).

The district court assumed that it could have subject-matter jurisdiction over the Pinders' § 1983 claim only if the Pinders had exhausted their state-court remedies. For support, the district court cited *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, in which the Supreme Court held that "if a State provides an adequate procedure" for recovering property, a plaintiff must first try to "use[ ] th[at] procedure" before filing a federal claim. 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). Of course, we have applied *Williamson County*'s state-court-exhaustion rule to dismiss claims on ripeness grounds in the past. In *Bateman v. City of West Bountiful*, we noted that "whether a [property-deprivation] claim is ripe for review bears on the court's subject matter jurisdiction under Article III of the Constitution." 89 F.3d 704, 706 (10th Cir. 1996). And in *Rocky Mountain Materials & Asphalt, Inc. v. Board of County Commissioners of El Paso County*, we invoked *Williamson County* in concluding that a claim "should have been dismissed for lack of jurisdiction on ripeness grounds." 972 F.2d 309, 311 (10th Cir. 1992).

But whenever we have treated *Williamson County*'s state-court-exhaustion rule as jurisdictional, the alleged property deprivation involved a regulatory taking—a deprivation involving an interference with property rights that "arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn. Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). The Pinders' claim, on the other hand, involves a classic taking, in which "the government directly appropriates private property for its own use." *E. Enters. v. Apfel*, 524 U.S. 498, 522, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998).

The Supreme Court has advised us that "it [is] inappropriate to treat cases involving physical takings as controlling precedents for the evaluation of a claim that there has been a 'regulatory taking,' *and vice versa*." *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 323, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) (emphasis added). In light of that instruction, I conclude that applying *Williamson County*'s state-court-exhaustion requirement to the Pinders' claims would risk ignoring the "longstanding distinction" between government acquisitions of property and regulatory restrictions. *Id.* So, as I see it, the proper question is not whether the district court had jurisdiction to hear the Pinders' suit. Instead, it is whether the Pinders stated a viable claim for relief.

---

4. For this reason, the disputes between the parties as to who owns the guns or whether they were actually admitted into evidence during trial or whether they are needed for possible future trials, see Aplt. Br. at 22–27; Aplt. Reply Br. at 3–7, 16, are all issues we need not decide. Given the outcome, we do not reach the other grounds relied upon by the district court.

To bring a due-process claim for property deprivation, under certain circumstances, a plaintiff must show that there were no adequate state-law post-deprivation remedies. *See, e.g., Freeman v. Dep't of Corr.*, 949 F.2d 360, 362 (10th Cir. 1991). Specifically, that requirement arises when the claim involves "*random and unauthorized* deprivations of property rather than deprivations according to some established policy, procedure, or custom." *Gillihan v. Shillinger*, 872 F.2d 935, 939 (10th Cir. 1989) (emphasis added), *overruled on other grounds by Clark v. Wilson*, 625 F.3d 686, 691 (10th Cir. 2010).

The Pinders' complaint averments—which must of course form the basis for our review of the district court's Rule 12(b)(6) determination, *see, e.g., Mayfield v. Bethards*, 826 F.3d 1252, 1256 (10th Cir. 2016); *Petrella v. Brownback*, 787 F.3d 1242, 1267–68 (10th Cir. 2015)—never refer to a specific policy, procedure, or official act that guided the seizure, *cf. Wolfenbarger v. Williams*, 774 F.2d 358, 365 (10th Cir. 1985) (concluding that the alleged seizure was not random when evidence suggested that it was "planned and authorized"). And nothing in the complaint suggests that Sheriff Mitchell acted pursuant to any directive or order. The complaint states only that the guns are "now in possession of" Sheriff Mitchell, Aplts.' App. Vol. 1, at 12, and that he "replied to all [of the Pinders'] requests [by stating] that ... the guns were associated with an ongoing criminal case," *id.* at 10. That, without more, is not enough to show that Sheriff Mitchell's retention of the guns was anything other than a random and unauthorized act.[1]

Because their complaint alleged only random, unauthorized acts, the Pinders had to allege that there were no adequate state-law remedies that would have given them relief. *See, e.g., Freeman*, 949 F.2d at 362. But, as the majority has pointed out, the Pinders never mention state-law remedies in their complaint. Accordingly, I would conclude that their complaint was properly dismissed under Rule 12(b)(6).

---

1. The Pinders essentially concede this point on appeal. They argue that, under Utah law, Sheriff Mitchell was legally "obligated to return all property which was not needed as evidence." Aplt.'s Opening Br. at 25–26. But Sheriff Mitchell's conduct could not be "authorized" by the state if he intentionally violated state law in keeping the guns. *See Moore v. Bd. of Cty. Comm'rs of Cty. of Leavenworth*, 507 F.3d 1257, 1260 (10th Cir. 2007) (concluding that a defendant's conduct was "random and unauthorized" when the "Plaintiffs contend[ed] that [the defendant] intentionally *violated* Department policy by driving so fast to [an] emergency call").